**HEFFERNAN v. ALEXANDER, Collector of Internal Revenue.**

No. 3896.

District Court, W. D. Oklahoma.

Feb. 23, 1931.

Douglas, Armitage & McCann, of New York City, and Paul E. Bradley, of Joplin, Mo. (Harry W. Blair, of Joplin, Mo., of counsel), for plaintiff.

Roy St. Lewis, U. S. Dist. Atty., and Fred A. Wagoner, Asst. U. S. Dist. Atty., both of Oklahoma City, Okla., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Henry C. Clark, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for defendant.

VAUGHT, District Judge.

The plaintiff brings this action against the defendant for the recovery of a certain sum allowed by the Commissioner of Internal Revenue as refund on taxes paid for the year 1917. It appears from the stipulation of facts filed herein that the plaintiff, John B. Heffernan, was a British subject and living in the province of Quebec, Canada; that during the year 1917, the plaintiff and one O. L. Henault, also a British subject, were copartners under the partnership name of Montreal Mining Company, engaged in the business of mining zinc and lead in the state of Oklahoma; that all of the income of the plaintiff from sources within the United States for the year 1917 was derived from the business of said partnership, and that on April 11, 1918, plaintiff filed an individual excess profits tax return, form 1101, showing a net income of $169,550.65, and an excess profits tax of $29,-355.19; that on the same date he filed his individual income tax return, form 1040, showing a net income subject to normal and sur taxes of $140,195.46, being $169,550.65 less

$29,355.19, and an income tax of $28,640.57, or a total income and excess profits tax of $57,995.76, which said sum was paid by the plaintiff on or before June 15, 1918, to the defendant's predecessor in office at Oklahoma City, who transmitted same to the Treasurer of the United States in the regular course of business. On July 22, 1921, the collector of internal revenue for the district of Oklahoma, filed an excess profits tax return on behalf of the partnership, Montreal Mining Company, and no other separate return of income and profits on the forms required by the regulations of the department was ever filed by or on behalf of said partnership.

The Commissioner of Internal Revenue determined that plaintiff's correct tax liability for the year 1917 was $15,587.59, and that said plaintiff had overpaid his individual taxes by the sum of $42,408.17. On February 27, 1923, plaintiff filed a claim for refund for said overpayment of $42,408.17, and on June 26, 1926, the Commissioner of Internal Revenue mailed to plaintiff a certificate of overassessment for the amount of said claim, and said overassessment was allowed on schedule No. 22349, dated October 5, 1926. Upon information and facts submitted to him, the Commissioner determined that the taxable income of the Montreal Mining Company subject to excess profits taxes was $316,859.22, and that the excess profit taxes due thereon were $122,339.34. The Commissioner notified the Montreal Mining Company of such determination by letter dated November 15, 1921, and on January 3, 1922, the Commissioner of Internal Revenue assessed against said partnership excess profit taxes in the amount of $122,339.34. On November 22, 1922, the said Montreal Mining Company filed a claim for the abatement of said assessment, said claim was rejected by the Commissioner of Internal Revenue on schedule No. 7770, dated October 2, 1926.

Upon information and facts submitted to him, the Commissioner of Internal Revenue, during October, 1926, determined and assessed against O. L. Henault, plaintiff's partner in said Montreal Mining Company, income taxes for the year 1917 in the sum of $15,587.59, plus $560.94 interest, or a total of $16,148.52, and on December 28, 1926, at the written request of the plaintiff and O. L. Henault, the defendant herein credited the account of O. L. Henault with the sum of $16,-148.53, and deducted the same from the overassessment in favor of the plaintiff. Thereafter, on March 5, 1927, a treasury check in the amount of $26,259.64, being the balance of the overassessment in favor of the plaintiff, plus $13,258.55 interest, or a total of $39,517.19, was forwarded to the defendant, and upon receipt of said check it was discovered by the defendant that the records of the defendant showed the above-mentioned assessment of $122,339.34, excess profit taxes against the partnership, Montreal Mining Company, no part of which had been paid, and on May 5, 1927, the defendant was instructed by the Commissioner of Internal Revenue to return said treasury check to the Treasury Department as a repayment to the appropriation from which drawn, and on the 9th of May, 1927, the defendant, in compliance with said request, returned said Treasury check to the Commissioner of Internal Revenue, and on the 17th day of May, 1927, the Commissioner of Internal Revenue authorized and directed the defendant to apply said balance on the overassessment in favor of the plaintiff, to wit, $26,259.64 against the outstanding unpaid assessment of $122,339.-34, then due from the Montreal Mining Company, a partnership, and on May 21, 1927, this defendant complied with the directions of the Commissioner of Internal Revenue, and, after crediting the account of the Montreal Mining Company with the amount of $26,259.64 as aforesaid, interest was computed on the latter amount and allowed in the sum of $172.69, which was likewise credited against the balance of $96,079.70 shown as due from said partnership. There is still outstanding and unpaid on the records of the Collector of Internal Revenue the sum of $95,307.01 due from the Montreal Mining Company. The said Montreal Mining Company ceased doing business during the year 1922, and thereafter liquidated. On November 21, 1927, the Commissioner mailed a deficiency letter to the plaintiff herein from which an appeal has been taken, and is now pending before the United States Board of Tax Appeals. And on the same date, a letter identical with the letter above referred to was mailed to O. L. Henault, who likewise appealed to the Board of Tax Appeals. On or about December 10, 1926, the Montreal Mining Company filed with the defendant Collector of Internal Revenue an offer in compromise of its partnership excess profits taxes in which there was tendered the sum of $12,500 in settlement of the taxes theretofore assessed against said partnership, and on February 7, 1927, the plaintiff filed with the defendant a supplemental offer in compromise in which he tendered the sum of $12,500, in addition to the amount previously ten-

dered, making a total offer of $25,000, which said offer in compromise was rejected by the Commissioner of Internal Revenue on March 29, 1927, and on July 15, 1927, the sum of $25,000 was refunded on account of the rejection of said offer. This action, therefore, is brought against the Commissioner of Internal Revenue at Oklahoma City, and prays for judgment in the sum of $39,517.19, being the amount of the refund heretofore determined in favor of the plaintiff plus interest thereon, together with the costs of this action.

The plaintiff in his brief says:

(1) That the Department, having established the practice of keeping the partnership and the individual entirely separate and distinct, should not now depart from that practice for the purpose of acquiring more taxes.

(2) That the refund in favor of the plaintiff was granted and paid long after the tax against which it was subsequently applied was outlawed and extinguished.

(3) That the partnership excess profits tax was barred July 21, 1926, five years after the return was filed.

(4) The refund having been made a part of the offer in compromise, it should have been returned on the rejection of the offer of compromise.

(5) A claim for refund having been filed with the Commissioner, and having been paid by the Treasury Department, no further claims were required.

(6) A proper claim for refund has been filed in this case sufficient to sustain the suit.

The defendant in his brief contends:

(1) That this action was commenced after the expiration of the statutory period for suit, and therefore that the action is barred.

(2) That since all sums paid by the plaintiff were paid to the predecessor of the defendant, and that since the check representing the amount due the plaintiff on the refund was transmitted to this defendant under instructions of his superior, the Commissioner of Internal Revenue, and since said check was recalled by the Commissioner of Internal Revenue, no action would lie against this defendant, either for sums paid to his predecessor or for any amounts allowed as a refund by the Commissioner of Internal Revenue, since at no time was any portion of said funds received, paid out, or disposed of by said defendant.

(3) That the plaintiff is liable for the tax due from the partnership composed of the plaintiff and O. L. Henault.

The contentions of both parties will be treated together. It is admitted that, when the plaintiff filed his return for the year 1917, he filed it under the misapprehension that he had the right to file his personal return showing all of the profits of the copartnership. The Revenue Act of 1917, section 1204 (1), 40 Stat. 331, amending section 8 of Revenue Act 1916, provides:

"(e) Persons carrying on business in partnership shall be liable for income tax only in their individual capacity, and the share of the profits of the partnership to which any taxable partner would be entitled if the same were divided, whether divided or otherwise, shall be returned for taxation and the tax paid under the provisions of this title." Revenue Act of 1917.

"Sec. 201. That in addition to the taxes under existing law and under this act there shall be levied, assessed, collected, and paid for each taxable year upon the income of every corporation, partnership, or individual, a tax (hereinafter in this title referred to as the tax) equal to the following percentages of the net income."

The act of 1917, it is admitted, "requires partnerships to make returns and gives them the privilege of selecting their fiscal year, giving them the same privilege as is now allowed to corporations." There can be no question then but that the partnership in this case was liable for a tax for excess profits for the year 1917. While it is true that no return was made by the partnership as such, yet, upon the discovery that no such return had been made, the collector, as provided by the act, made a return for the partnership for the year 1917, and this return was as effective for the purpose of starting the statute of limitations running as if it had been made by the partnership itself. U. S. v. Nelson B. Updike (D. C. Neb.) 25 F.(2d) 746. If the return was filed on July 22, 1921, the collection could be made at any time within five years from that date or up until July 22, 1926. The assessment was made by the Commissioner of Internal Revenue on January 3, 1922. The collection, therefore, was not barred when the Revenue Act of 1926 was passed on February 26, 1926, and section 278 of that Act (26 USCA §§ 1058–1062a) expressly authorizes the collection of this tax within six years from the date of its assessment, subdivisions (d) and (e) of said section (26 USCA §§ 1061, 1062) being as follows:

"(d) Where the assessment of any income, excess-profits, or war-profits tax imposed by this title or by prior Act of Con-

gress has been made (whether before or after the enactment. of this Act) within the statutory period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court (begun before or after the enactment of this Act), but only if begun (1) within six years after the assessment of the tax, or (2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer.

"(e) This section shall not bar a distraint or proceeding in court begun before the enactment of the Revenue Act of 1924; nor shall it authorize the assessment of a tax or the collection thereof by distraint or by proceeding in court (1) if at the time of the enactment of this Act such assessment, distraint or proceeding was barred by the statutory period of limitation properly applicable thereto, unless prior to the enactment of this Act the Commissioner and the taxpayer agreed in writing thereto, or (2) contrary to the provisions of subdivision (a) of section 274 of this Act."

Section 278 of the 1926 Revenue Act has been construed in this connection in the following cases: Florsheim Drygoods Co. v. U. S., 280 U. S. 453, 50 S. Ct. 215, 74 L. Ed. 542, decided February 24th, 1930; Liberty Baking Co. v. Heiner (D. C.) 34 F. (2d) 513, affirmed (C. C. A. 3d Circuit) 37 F. (2d) 703; U. S. v. Updike (D. C.) 25 F. (2d) 746, affirmed (C. C. A. 8th Circuit) 32 F. (2d) 1, and by the Supreme Court of the United States on May 19th, 1930, 281 U. S. 489, 50 S. Ct. 367, 74 L. Ed. 984.

It appears from the foregoing act that the collection of the tax assessed against the partnership was not barred until January 3, 1928. This, it seems, would answer contentions 2 and 3 of the plaintiff as above stated.

■ It is next contended by the plaintiff that, the refund having been made a part of the offer in compromise, it should have been returned on the rejection of the offer of compromise. At the time the offer of compromise was made, it is admitted in the briefs of both parties that there was an offer of $25,000 in addition to the refund due the plaintiff. In other words, the plaintiff and his partner were offering $25,000 in addition to the refund formerly determined in favor of the plaintiff then held by the Commissioner. There is little basis for this contention, No. 4, because the rule as established was that, if the compromise were not accepted, then the parties should be placed in

exactly the same position in which they were at the time the compromise was offered. At the time the compromise was offered, the refund claimed by the plaintiff was in the hands of the government, and they did not offer that, except in so far as they waived any further claim to it. Numerous authorities are cited in the briefs, but we do not deem it necessary to cite them here.

■ The defendant contends that this action could not be maintained by the plaintiff for the reason it is barred by the statute of limitations. The tax was paid by the plaintiff in 1918. February 27, 1923, the plaintiff filed a claim for refund, and the claim was allowed on October 5, 1926. This assessment of the individual partners and of the partnership was so intermingled that it is difficult to consider one without the other, and, since the defendant contends that the act of 1926 gave to the government an additional year, or six years after the actual assessment in which to collect said assessment, and since the Commissioner determined an overassessment in favor of the plaintiff as of October 5, 1926, it appears that the statute of limitations would affect the claim of the government for the collection of this assessment against the partnership, and the claim of the individual for his refund, to the same effect. Therefore the contention of the defendant as to the statute of limitations is not considered favorably.

The next proposition, which is the second contention of the defendant, is whether or not this action was brought properly against the defendant. It is admitted that the defendant, A. C. Alexander, became Collector of Internal Revenue on the 1st day of March, 1923, and the only connection that he had with any funds belonging to the plaintiff was in receiving the check from the Commissioner of Internal Revenue, dated March 5, 1927, in the sum of $39,517.19, payable to the plaintiff, but upon the receipt of the check his attention was called to the fact that upon the records in the defendant's office, there was an assessment of $122,339.44 excess profits tax against the partnership which was called to the attention of the Commissioner of Internal Revenue, who thereupon by letter dated May 5, 1927, instructed the defendant to return said treasury check to the Treasury Department, which the defendant did. At no time was he permitted to exercise his discretion or judgment as to the delivery of this check to the plaintiff, but whatever he did relative to said check he did as the agent and representative

of the Commissioner of Internal Revenue. He was bound by the instructions that accompanied this check, and any subsequent instructions which he received from the Commissioner relative to the check prior to its delivery to the plaintiff. He acted, therefore, not in a discretionary capacity, and not in the exercise of his own judgment, but under the strict instructions of the Commissioner himself. In fact, the relation existing between him and the Treasury Department was one of trust, and no higher obligation rested upon him than to obey the instructions of his superior officers.

"The basis of an action against the collector is his receipt of the tax, and if he has not received it we do not see how he can be called on to pay it back; and the fact that Lederer was the channel by which the Commissioner transmitted the refusal to refund did not impose liability. Lederer was liable, if at all, for the tax of 1912, for this had come into his own hands; but no statute made him liable for money that was collected by his predecessor, but had never been sued for." Philadelphia, H. & P. R. Co. v. Lederer (C. C. A.) 242 F. 492, 494.

"This action is not based upon anything that the collector of internal revenue, did, or failed to do, while in office, but is based solely upon an act of Congress for the allowance and payment of interest on sums wrongfully collected by collectors of internal revenue. This claim arising specifically under this act of Congress, we are of the opinion that the action is not properly brought against the former collector, and could be maintained only against the United States, which, by act of Congress, has provided for its payment. The act of Congress did not place upon the collector of internal revenue the duty of paying interest on sums wrongfully collected, but provided for its payment by the United States. We conclude, therefore, that this action may not be maintained against the collector in person." Penn Smokeless Coal Co. v. Lewellyn (D. C.) 26 F.(2d) 743, 744.

See, also, Smietanka v. Indiana Steel Co. 257 U. S. 1, 42 S. Ct. 1, 66 L. Ed. 99; Union Trust Co. of San Francisco v. Wardell, 258 U. S. 537, 42 S. Ct. 393, 66 L. Ed. 753.

"Where income tax was paid without protest, and no demand was made for return prior to expiration of collector's term of office, remedy in case tax not legally due had been paid was by action against the United States, and not by personal action against former collector." Harrison et al. v. Lewellyn (D. C.) 28 F.(2d) 990.

■ It appears clearly to this court, from an examination of the statute vesting jurisdiction in the various federal courts for the purpose of collecting taxes illegally or erroneously collected, that there are three types of actions possible:

(1) A suit in the United States District Court against the collector who has received the alleged illegal tax.

(2) A suit in the United States District Court against the United States for the amount collected.

(3) A claim in the nature of a suit prosecuted in the United States Court of Claims.

The various limitations affecting either one of the foregoing are easily discernible from the statute itself. See USCA title 28, § 41, par. 20.

■ There is, therefore, a serious question in the mind of this court whether or not this action could be maintained against the defendant, Alexander. Most certainly no personal liability could attach to him, but since to decide this question would make a decision of any of the other questions unnecessary, and since, if an appellate court should determine that the defendant Alexander is a proper party defendant, and that therefore the action is properly brought, another trial of the case on the other questions would be necessary, the court deems it advisable to withhold any formal decision on this question other than an expression of his opinion, and to proceed with the decision of all the questions involved so that all matters involved in this case may be properly presented to the appellate court.

■ The last question submitted is the third contention above of the defendant that the plaintiff is actually liable for the tax due to the partnership composed of himself and O. L. Henault. The evidence in this case discloses that this partnership was dissolved in 1923, and the assets of the partnership divided between plaintiff and his copartner. The evidence furthermore shows that both of the partners were British subjects and residents of the province of Quebec, Canada, and therefore aliens, and there is no evidence that any property whatever existed at the time this assessment against the partnership was made belonging to the partnership proper. Whatever property existed was in the hands of the copartners, as individuals. Now if this plaintiff as a partner is liable for the partnership debts and the taxes assessed against the partnership, and the government has moneys belonging to said plaintiff, and the partnership is indebted to the

government for taxes, has the government the right to apply any sums in its hands belonging to the plaintiff as one of the copartners to the partnership indebtedness?

Assuming for the sake of argument that the plaintiff having had a refund determined in his favor for 1917, and that he was indebted to the government for an unpaid tax assessed for the latter year, say for 1920, would the government, at the time the refund was determined in 1926, have the right to apply the refund to the unpaid taxes? There can be no question as to this. The Supreme Court of the United States in Francis v. McNeal, 228 U. S. 695, 33 S. Ct. 701, 702, 57 L. Ed. 1029, L. R. A. 1915E, 706, says: "But the fact remains as true as ever that partnership debts are debts of the members of the firm, and that the individual liability of the members is not collateral like that of a surety, put primary and direct, whatever priorities there may be in the marshaling of assets. The nature of the liability is determined by the common law." See, also, Lewis v. U. S., 92 U. S. 618, 23 L. Ed. 513.

The court, therefore, concludes:

(1) That the assessment against the partnership made on January 3, 1922, in the sum of $122,339.34, was a valid and legal assessment.

(2) The collection of said tax by the government was not barred by the statute until six years from January 3, 1922, or January 3, 1928.

(3) That the offer of compromise which was rejected by the government did not at the time, and does not now, affect the legal status of the parties with reference to the collection of the tax against the partnership or the payment of the amount to the plaintiff due under the refund.

(4) The partnership having been dissolved in 1922, and its assets distributed, and at the time of the filing of this action said partnership tax remaining due and unpaid, and the government having in its possession the sum allowed to the plaintiff as a refund on the 1917 taxes, and said partnership tax being a liability against the individual partners, that the government had the legal right to apply said sum due the plaintiff on the refund to the payment of said tax due from the partnership.

(5) As above stated, the court is of the opinion that this action is not properly brought against the defendant, A. C. Alexander, as under the pleadings and the stipulation of facts the action should have been brought against the United States, but the court does not formally decide this question for the reasons hereinbefore stated.

(6) The court finds generally for the defendant.

Judgment is therefore rendered for the defendant, and for the costs of this action.