GEORGE S. GROVES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 87585. Promulgated October 6, 1938.

*Albert S. Lisenby, Esq.*, for the petitioner.
*Eugene G. Smith, Esq.*, for the respondent.

OPINION.

STERNHAGEN: 1. The Commissioner, in the notice of deficiency, included in the petitioner's income for 1932, $74,098.44, which he called "distribution of corporate profits." This figure is the remainder of the $134,098.44 charged to petitioner's account on the Domestic corporation's book, the other $60,000 being treated as salary and considered in a separate item. The Commissioner said: "There is no evidence to substantiate your contention that these drawings were loans; no notes or other evidence of indebtedness were given at the time the money was drawn; no interest was paid." He also gave as a reason for treating the $74,098.44 as distribution of profits, the as-

sumed fact that "the corporation has been liquidated", which was incorrect. In the present proceeding the petitioner has introduced substantial evidence which apparently was not before the Commissioner for consideration in determining the deficiency.

It appears that in the taxable year 1932 the corporation declared and paid only one dividend, of which the petitioner received $22,500, or $25 a share. This the petitioner returned as dividend income, and it is not here in controversy. The Commissioner, however, argues that since petitioner was the president and controlling shareholder of the corporation, his contention that these withdrawals were loans rather than distributions must be examined with the closest scrutiny. In this the Commissioner is unquestionably correct. The evidence has been carefully considered in conformity with this general doctrine. While the maze of corporations used by this petitioner as instruments of his complicated business makes it extremely difficult to distinguish between actual occurrences and the simulation of occurrences found in complicated bookkeeping accounts and intercompany fictions, we think the petitioner's evidence as to the $74,098.44 is sufficient to show that the respondent's determination is in error as to the entire amount.

Clearly the $8,795.06 which was charged to Domestic as interest due from petitioner on the account can not under any circumstances be treated as an amount received by petitioner from the corporation. Several of the items were advances made by Domestic to its own employees on petitioner's account. The petitioner did, after 1932, cover the balance in the account by a note upon which there were regular interest charges. Ultimately the entire amount remaining of both the principal and interest seems to have been discharged. It is true that the so-called payments and repayments consisted largely of intercompany transactions and credits; but they are, if believed, enough to support the petitioner's statement that the amounts charged to him were not by way of distributions, as the Commissioner has held, but were to be repaid, as the petitioner has treated them.

The respondent's inclusion of $74,098.44 in the petitioner's income for 1932 is reversed.

2. The Commissioner disallowed a deduction by the petitioner of $30,275 as attorneys' fees, and the petitioner contests the disallowance. The petitioner now admits, however, that $5,000 thereof paid to Robb, Clark, and Bennitt was properly disallowed. The disallowance of the remainder is stated by the Commissioner to be based upon the ground that the amount paid was not an ordinary and necessary expense of carrying on trade or business, as the deduction is stated in Revenue Act of 1932, section 23 (a), because the peti-

tioner was "not engaged in any trade or business as an individual." It is argued that the petitioner did not have a trade or business and that his income was entirely from salary, rents, and dividends. This is the only ground which the respondent relies upon to support his disallowance. He raises no question that the attorneys' services were in fact performed, that they were paid for in the amounts stated, or that the amounts paid were reasonable compensation for the services so performed.

It must be held, upon the evidence, that the petitioner was in fact actively engaged in business, notwithstanding that his activities were largely devoted to the conduct of numerous corporations which were themselves engaged in carrying on various small loan businesses. Even if petitioner had been but the active president of an operating corporation upon a salary, his activities would have been recognized as carrying on a trade or business within the meaning of the statute, *Ralph C. Holmes*, 37 B. T. A. 865 (on review, C. C. A., 2d Cir.). Here the individual's activities went much further than the performance of services for a business corporation at a salary, and included the protection and promotion of elaborate interests in various corporations represented both by shareholdings and by salary contracts. Although we can not give much weight to the testimony that Wallace Groves performed substantial services in procuring for his brother service contracts of $25,000 and $15,000, respectively, with the Franklin Plan Corporation and the Community Finance Corporation, in view of the relation between petitioner and those corporations, there is in the evidence sufficient to support the petitioner's contention that the amounts paid both to Wallace Groves and the firm of Battle, Levy, Van Tine & Fowler were ordinary and necessary expenses paid by petitioner during the taxable year in carrying on his business and are therefore deductible. The Commissioner's determination is reversed.

3. The Commissioner, finding the $13,860.75 deposited by petitioner in his bank account and identifying it as dividends received from Personal Industrial Bankers, Inc., included it in petitioner's income as "dividends not reported, $13,860.75", and said that the claim that the shares have been sold to Wagegro, to which the dividends therefrom belonged, was not supported by sufficient proof of sale. The petitioner, assailing this, puts in evidence only the oral testimony of Wallace Groves and George Groves, together with a copy of the minutes of the board of directors of Wagegro of December 10, 1931.

Bearing in mind that the alleged transaction is claimed to have occurred between a corporation and its principally interested shareholder, involving shares of stock in a corporation in which the participants were likewise principally, if not entirely, the interested persons, it is again necessary, as in the earlier issue, that the evidence re-

lied upon by the petitioner to support his contention be subjected to close scrutiny. It appears in this record as well as in other proceedings before the Board and the courts, of which we may take judicial notice,[1] that this petitioner and his brother were, in carrying on their business, accustomed to account for their financial transactions with an intricacy of detail well-nigh overwhelming to one seeking to find the kernel of reality. In such a customary method of conduct one may reasonably be skeptical of the existence of a transaction said to involve $164,600 on the one side and 1,683 shares of stock on the other, the proof of which is not found in the records of the corporations which the brothers controlled, but is found in its most important parts only in the oral statements of the individuals.

It appears from the Wagegro minutes that George S. Groves "would be willing to sell" the 1,683 shares and Wagegro resolved to purchase them. These are not the words of a present sale, but leave entirely open the question as to when the proposed sale was to be consummated. One might expect from these persons a more definitive use of language to apply to a present sale. But failing that, it is not unreasonable to expect that the certificates would be endorsed and transferred at once had it been recognized that a sale was presently taking place. It is not shown that they were ever transferred. Failing that, one might expect that the transfer would have been effectively recorded upon the books of Personal Industrial Bankers, Inc., as soon as the next dividend was decided upon. All of these niceties of detail having been omitted, one might expect that the alleged "turning over" by George Groves of the dividends to Wagegro when paid by the Personal Industrial Bankers would have been evidenced more clearly than by George Groves' oral statement that "when they [the dividend] did come to me, I promptly turned them over to Wagegro—the money, with the exception of the first dividend." Since the checks were substantial in amount and were deposited in George Groves' personal account in the bank, it is difficult to believe that he immediately "turned over—money", that is, currency, and, if not money, there is no evidence that he drew checks on his own account payable to Wagegro.

While the absence of any one of these several steps would perhaps of itself not seriously weaken a taxpayer's claim, the cumulative effect of all of them may properly serve to do so. Lacking, therefore, the reasonable conviction, despite the oral statements of the petitioner and his brother, that the dividends actually received by petitioner belonged to or were actually transmitted to the Wagegro Corporation, as alleged, we have omitted to find this to be the fact. Since

---

[1] *Wallace Groves,* 36 B. T. A. 14 ; affd., 99 Fed. (2d) 179 ; *Domestic Management Bureau, Inc.,* 38 B. T. A. 640 ; *Wagegro Corporation,* Docket No. 82077.

petitioner in fact actually received the dividends in 1932, and was at the time the record owner of the shares upon which the dividends were declared, the Commissioner's determination that the amount of $13,860.75 is within petitioner's income as dividends is sustained.

4. The Commissioner added to petitioner's income $60,000 as "salary not reported", which he said was received by petitioner from the Domestic Management Bureau, Inc. On the books of that corporation this amount appears in petitioner's account, considered in the first issue, in which $134,098.44 appears as the gross charges to the petitioner in 1932. As shown by the findings, this item of $60,000 was placed in the account at the end of the year 1932 at direction of petitioner, who controlled the operations of the corporation, in order to treat as loans the amounts which he had theretofore admittedly received as salary. It is not disputed by the petitioner that of this amount of $60,000 he actually received $45,000 in cash and was given credit in his running account of $15,000 as salary at the rate of $5,000 each for the months of January, February, and March.

The point which the petitioner now makes in attacking the Commissioner's determination is that it was never intended that the corporation should pay him this amount as salary, and that his instruction to change the bookkeeping at the end of the year is sufficient to characterize the amounts received as loans. There is, however, in our opinion, no support for this view either in fact or in law. The petitioner was an officer of the corporation and as such it may be reasonably supposed that he would be compensated. He had been compensated in 1931 in the amount of $50,000. In 1932 he continued to receive $5,000 per month and was apparently aware of the fact, although he says that he was so occupied with litigation that he did not realize it was being accounted for as salary. There is nothing in the evidence to show that he received the amount wrongfully or otherwise incurred any obligation to repay it, and his mere instruction to the bookkeeper at the end of the year to account for the amount as if it had been a loan is insufficient to establish such a legal obligation. The Commissioner's determination that the $60,000 should be included within the petitioner's 1932 income as salary is sustained.

5. The Commissioner included in petitioner's income $28,220, consisting of several items which the respondent held had not been satisfactorily explained to him by the taxpayer. At the trial, respondent's counsel conceded that the inclusion of the amount in petitioner's income was erroneous.

6. The petitioner seeks a deduction of $7,564.90 as interest paid to Domestic on his running account. This figure is the remainder of $8,795.06 which had been charged as interest in that year. By reason of the two specific credits of $230.16 and $1,000, petitioner treats

only the remainder as interest properly deductible. His argument is that although the $7,564.90 can not be identified upon Domestic's books as interest, it must be so regarded upon the doctrine that, when both principal and interest are due on an account, unidentified payments on the account must first be appropriated to interest. This doctrine, however, is not applicable when from the circumstances it may reasonably be inferred that the parties did not intend such unidentified payments to be appropriated to interest. *Benson* v. *Reinshagen*, 75 N. J. Eq. 358; 72 Atl. 954; 21 Ruling Case Law 99, sec. 105; 48 Corpus Juris 662, sec. 119. The books of Domestic, it must always be remembered, were in the direct control of George Groves, and may therefore be said to reflect the intent of both the debtor and the creditor. They show that both by way of charges and by way of credits to the account during the year in question and in subsequent years interest items were always identified as such, as were most of the other items. Some items which were not identified on the books have been shown in the testimony to represent adjustments of noninterest items. The books themselves, therefore, afford no support for the inference that any interest was paid. George Groves' testimony on the subject is of no greater weight than the books, if indeed it is of any weight whatever on this subject. He said, when asked whether interest upon his account was included in the $156,000 note given on August 15, 1933:

Before I gave that note in 1932, I borrowed—I forget—I borrowed a large sum and I paid back a large sum and I paid interest on my account, *as the books will show.* Then when I gave that $156,000 note the board of directors held a meeting, they authorized me giving the note, the balance of that loan account with the note—the board of directors.

Thus the witness appears to have no greater knowledge than what "the books will show"; and the books will show no payment of interest and only credits of the adjustments of $1,000 in February and $230.16 in July. In 1933 they show several credits which are expressly called "interest." It seems reasonable, therefore, to believe that, if any payments made by the petitioner to Domestic in 1932 had been intended by the parties to the account to be applied against the interest charge, they would have been so designated by Domestic on its books. Under these circumstances it is not sufficient to support the deduction that if there had been a dispute between the parties any unidentified payments on the account might first have been treated as payments of interest. In summary, the evidence shows only that on Domestic's books petitioner was debited with $8,795.06 interest throughout the year and credited thereon with $1,230.16, and this is insufficient to justify a holding that the remaining $7,564.90 is to be regarded as paid by the petitioner, or

that the deficiency should be reduced on the theory that petitioner mistakenly failed to take the deduction on his return.

7. The Commissioner disallowed a deduction of $200 for charitable contributions, on the ground that there were no records to substantiate the deduction. The petitioner introduced no evidence to support the allegation that such contributions were made, and in his brief explains the omission as *de minimis*. The disallowance by the respondent is therefore sustained.

8. The respondent added to the deficiency 25 percent under section 291, Revenue Act of 1932,[2] because of petitioner's failure to file his return within the time as extended. This time, as shown by the facts, expired September 15, 1933. The petitioner assails this determination and seeks to establish that the delay was "due to reasonable cause and not due to willful neglect." The evidence, however, does not support the contention. Petitioner himself not only saw the collector's letter when it arrived in June 1933, but was cognizant of the fact at that time that the period was extended only until September 15. No misunderstanding by his secretary will serve to excuse him from acting upon his own knowledge of this fact. It has been held frequently that the duty of filing a return is the personal duty of the taxpayer himself, and that he can not excuse himself from the proper performance of this duty because of the error of an employee. *American Milk Products Corporation* v. *United States*, 70 Ct. Cls. 169; 41 Fed. (2d) 966; *Berlin* v. *Commissioner*, 59 Fed. (2d) 996; certiorari denied, 287 U. S. 642; *Sabatini* v. *Commissioner*, 98 Fed. (2d) 753; *Pioneer Automobile Service Co.*, 36 B. T. A. 213. This has been held when the taxpayer claimed to be unaware of the date when his return was due, and *a fortiori* it is true here when the taxpayer knew the date. A misunderstanding by an employee of the clear and unmistakable language of the collector's letter, or a misunderstanding by him of the statement of its contents made to him by the taxpayer, is not reasonable cause for failure to file the return, and for the purposes of the statute it may properly be regarded as willful neglect. The addition to the deficiency of 25 percent is therefore sustained.

*Judgment will be entered under Rule 50.*

---

[2] SEC. 291. FAILURE TO FILE RETURN.

In case of any failure to make and file a return required by this title, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, 25 per centum of the tax shall be added to the tax, except that when a return is filed after such time and it is shown that the failure to file it was due to reasonable cause and not due to willful neglect no such addition shall be made to the tax. The amount so added to any tax shall be collected at the same time and in the same manner and as a part of the tax unless the tax has been paid before the discovery of the neglect, in which case the amount so added shall be collected in the same manner as the tax. The amount added to the tax under this section shall be in lieu of the 25 per centum addition to the tax provided in section 3176 of the Revised Statutes, as amended.