ESTATE OF LAWRENCE M. COLFELT, JR., THE FIRST PENNSYLVANIA BANKING AND TRUST COMPANY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 74728. Filed February 20, 1961.

*C. Walter Randall, Jr., Esq.*, for the petitioner.
*Paul D. Ritter, Esq.*, for the respondent.

OPINION.

WITHEY, *Judge:* The Commissioner has determined a deficiency of $25,892.45 in the Federal estate tax of the estate of Lawrence M. Colfelt, Jr. However, as a result of a concession by the Commissioner,

the parties are in agreement that there is no deficiency and that the petitioner has made an overpayment of estate tax in the amount of $24,929.28. The only issue remaining for determination is when the overpayment was made.

All of the facts have been stipulated and are found accordingly.

Lawrence M. Colfelt, Jr., sometimes hereinafter referred to as the decedent, died testate and a resident of Chester County, Pennsylvania, on March 19, 1954. The First Pennsylvania Banking and Trust Company, a Pennsylvania corporation with its principal office in Philadelphia, is the duly qualified and acting executor of the decedent's estate.

On June 20, 1955, the petitioner timely filed a Federal estate tax return with the district director of internal revenue at Philadelphia, Pennsylvania, and at the same time paid to the director Federal estate tax in the amount of $8,811.79. Thereafter a revenue agent audited the return and there was mailed to the petitioner a 30-day letter dated June 14, 1957, in which a net deficiency of $28,652.45 was proposed by reason of five adjustments. The petitioner filed a protest with the appellate division of the regional commissioner's office at Philadelphia, Pennsylvania, and on April 30, 1958, while the matter was pending in that office, remitted to the district director an additional amount of $25,000, accompanied by a letter which contained the following:

In re: Estate of Lawrence M. Colfelt, Jr., Deceased

An Estate Tax Return was filed with your office for the above named decedent who died on March 19, 1954, a resident of Glenloch, Chester County, Pennsylvania. Tax in the amount of $8,811.79 was paid at the time of the filing of the Return.

Thereafter this Return was audited and a deficiency in the net amount of $28,652.45 was proposed. The decedent's executor is contesting two of the adjustments recommended by the Revenue Agent and this matter is now pending before the Appellate Division, Regional Commissioner's Office, Philadelphia, Pennsylvania. If the executor prevails in its contentions, the amount of additional Federal Estate Tax due and owing will be less than $100.00. However, in order to stop the running of interest in the event that either or both of the issues involved should be determined adversely to the Executor's contention, there is paid herewith on account of possible additional Federal Estate Tax the sum of $25,000.00. You will find a check enclosed in that amount to the order of the Internal Revenue Service.

It is, however, understood that the taxpayer makes this payment without prejudice to its present position that no such additional tax is in fact due and owing; and it is understood that the executor will file claim for refund of this payment on the grounds that the Federal Estate Tax is hereby being paid.

By a letter dated May 6, 1958, the district director acknowledged receipt of the above-mentioned $25,000 on May 1, 1958.

On May 7, 1958, the petitioner filed with the district director a claim for refund of Federal estate tax in the amount of $24,929.28.

The reasons set forth in the claim for the allowance thereof were as follows:

Taxpayer made the $25,000.00 payment of tax on May 1, 1958 after an Internal Revenue Agent had audited the Federal Estate Tax return and recommended certain adjustments resulting in a proposed deficiency of $28,652.45. The payment was made solely to avoid the running of interest in the event the Agent should be sustained in his contentions. However, the taxpayer did not and does not now agree with 2 of the adjustments recommended by the agent and believes that the return was properly prepared and the proper amount of tax paid therewith, except that $70.72 was originally underpaid due to the inadvertent undervaluation by $256.25 of certain assets listed on Schedule B of the return and the omission of $36.00 of the valuation of assets under Schedule F thereof. The issues raised hereby are now pending in the Appellate Division, Regional Commissioner's Office, at Philadelphia, Pa. as the result of filing of a Protest following the issuance of a 30 day letter. The claimant is still duly authorized executor of this Estate.

Thereafter, on June 11, 1958, the respondent sent to the petitioner a statutory notice of his determination of a deficiency of $25,892.45 in the Federal estate tax of the decedent's estate. On July 2, 1958, the petitioner filed its petition with this Court.

On January 19, 1960, the district director sent the petitioner a letter relative to the $25,000 heretofore mentioned which contained the following:

| | |
|---|---|
| Amount of remittance | $25,000.00 |
| Date Received | 5/6/58 |
| Estate | Date of Death |
| Taxable year(s) | 3/19/54 |

Your remittance in the above amount has been received in this office. Apparently you intended it to represent an advance payment of tax and/or interest relating to a pending deficiency (or deficiencies) for the year(s) shown.

The Internal Revenue Service assesses voluntary payments of this nature only in those cases where the amount of the deficiency has been determined. Inasmuch as the amount of the deficiency has not been determined in your case, no assessment will be made at this time.

A voluntary payment which is not assessed is treated as a deposit made in the nature of a cash bond for the payment of taxes thereafter found to be due. As such it will have no effect on the computation of interest nor on the running of the period of limitation for filing a claim. At such time as the amount of the deficiency is determined, an assessment will be made and your remittance will be applied as a payment of tax and/or interest made on the date of the assessment.

If you do not want your remittance to remain on deposit under the above conditions, you have the following alternatives:

(1) You may file an amended return for the year(s) involved. Any additional tax reported thereon will be assessed and the running of interest on such additional tax will, to the extent the tax is satisfied by application of the above remittance, be terminated on the date of assessment.

(2) You may request that the amount of your remittance be returned to you. In this event, interest will continue to run on any unpaid tax as provided by law.

If you choose one of the above alternatives, please attach copy of this letter to the face of your amended return (earliest year if more than one), or request for return of the amount of your remittance. The attached copy may be retained for your reference.

On February 5, 1960, the $25,000 heretofore mentioned was assessed and no portion thereof has ever been refunded to the petitioner.

The petitioner takes the position that the agreed overpayment of $24,929.28 was made on May 1, 1958, the date of the receipt by the district director of the above-mentioned $25,000, which date was approximately 6 weeks prior to the sending by respondent of the notice of deficiency on June 11, 1958. The respondent contends that the overpayment in question was made on February 5, 1960, when assessment was made of the above-mentioned $25,000.

*Fred Draper*, 32 T.C. 545 (1959), involved a situation similar to that presented here. There the taxpayers on June 13, 1951, in anticipation of a forthcoming determination of deficiencies in their income taxes for 1944 through 1948, transmitted $120,591.21 to the district director who placed it in a suspense account in his office where it remained without having been assessed or allocated to any tax liability both at the time the respondent sent notices of deficiencies on May 23, 1956, and at the time of our opinion on May 29, 1959. Although conceding that recovery of any portion of the amount transmitted to the district director was barred by the statute of limitations if the amount was in fact a payment of the tax at the time transmitted, the taxpayer contended that the amount was never taken by the district director as a payment of any tax and that we should determine an overpayment of the full amount transmitted on the ground that the statute of limitations had never begun to run. After stating that we had jurisdiction to find an overpayment of tax with respect to a year properly before us, we said:

However, no overpayment exists with respect to a particular fund until all or a part of that fund has been assessed or allocated to the payment of a tax. *Rosenman* v. *United States*, 323 U.S. 658 (1945). Since no part of the $120,591.21 has been assessed or allocated to the payment of a tax, no overpayment exists with respect to any part of that fund. *Rosenman* v. *United States, supra.*

In our opinion the above-stated rule is applicable in the instant case. Since there is no showing that prior to February 5, 1960, any portion of the $25,000 here involved was ever assessed or allocated to the payment of any tax and since it is shown that the entire $25,000 was assessed on February 5, 1960, we hold that the overpayment of $24,929.28 in question was made on February 5, 1960. Accordingly, a decision will be entered that there is no deficiency in estate tax but an overpayment of $24,929.28 which was made after the mailing of the notice of deficiency.