JAMES F. KEITH AND MABEL S. KEITH, PETITIONERS, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78006. Filed March 31, 1961.

*Harold E. Smith, Esq.*, for the petitioners.
*James E. Johnson, Jr., Esq.*, for the respondent.

#### OPINION.

DRENNEN, *Judge:* Respondent determined deficiencies in petitioners' income tax in the amounts of $2,255.85 and $271.05 for the years 1954 and 1956, respectively.[1]

The issues presented are: (1) Whether the petitioners are entitled to an interest deduction for any part of certain payments on account of deficiencies in income tax, additions to tax, and interest for the years 1942 to 1947, inclusive, made to the district director of internal revenue in each of the years 1954 and 1956; and (2) if so, what amounts of such payments are deductible.

All the facts were stipulated and are so found.

Petitioners James F. Keith and Mabel S. Keith are husband and wife who resided during the taxable years 1954 to 1956, inclusive, in Rome, Georgia.

They filed timely joint income tax returns for the years 1954 and 1956 with the district director of internal revenue for the district of Georgia.

James F. Keith (hereinafter referred to as petitioner) operated Keith Walgreen Drug Company in Rome, Georgia, during the years 1954, 1955, and 1956.

Itemized nonbusiness deductions totaling $10,718.40 in 1954 and $4,430.89 in 1956 were claimed on the returns filed by petitioner for those years. Included in those totals were deductions for payments of interest claimed to have been made to the Internal Revenue Service on

---

[1] Due to errors in calculation on the returns as filed, petitioners place in controversy only the amounts of $2,228.91 for the year 1954 and $247.86 for the year 1956.

prior years' tax liabilities in the amounts of $7,252 for 1954 and $2,235 for 1956.

An assessment by the district director of internal revenue at Atlanta, Georgia, was made against petitioner on November 6, 1952, for additional tax, additions to tax, and interest, aggregating $170,241.98 for the taxable years 1942 to 1947, inclusive, as follows:

| Year | Income tax | Additions to tax, I.R.C. 1939 | | Interest | Total |
|------|-----------|-------------------------------|-------------------------|----------|-------|
|      |           | Sec. 293(b) | Sec. 294 (d)(2) |          |       |
| 1942 | $4,365.43 | $2,093.44 | | $2,515.86 | $8,974.73 |
| 1943 | 5,373.66 | 2,642.19 | | 2,774.50 | 10,790.35 |
| 1944 | 18,655.91 | 9,424.46 | | 8,512.97 | 36,593.34 |
| 1945 | 28,747.56 | 14,373.78 | | 11,393.09 | 54,514.43 |
| 1946 | 22,852.19 | 11,426.10 | $1,371.91 | 7,685.53 | 43,335.73 |
| 1947 | 8,666.99 | 4,333.50 | 638.09 | 2,394.82 | 16,033.40 |
| Total | 88,661.74 | 44,293.47 | 2,010.00 | 35,276.77 | 170,241.98 |

Petitioner outlined a proposal for liquidation of the above assessments in a letter to the district director dated November 21, 1952, in which the following was stated:

Accordingly, I request that your office not file notices of lien. In order to protect you fully in this matter, I will, at your request, furnish you with security deeds covering my real estate. I also agree that pending consideration of an offer in compromise to be filed, that I will not sell, mortgage, transfer by gift or otherwise, any of my properties and that all expenditures from my bank account will be limited to those made in the normal course of carrying on my drug business and for normal living expenses. In the event it should appear to be desirable or necessary to sell properties, your permission and approval would be obtained with the understanding that all of the proceeds over and above the mortgages on such property will be paid in to your office.

I further agree, that during the period that the offer in compromise is under consideration, that I will pay each month on such offer, the sum of One Thousand ($1,000.00) Dollars, which will be considered in the event the offer should be rejected, as payments on account.

If your office could find it possible to accept a proposal under which a $1,000.00 per month payment could be made on these liabilities until such time as the balance could be paid through private borrowings, I would undertake to liquidate the account entirely without the filing of the offer in compromise. However, if this cannot be done, it appears that an offer in compromise will be necessary in order to give me an opportunity to work out of this situation without being completely ruined financially.

As a result of petitioner's letter dated November 21, 1952, security deeds covering petitioner's property were furnished to the district director in lieu of the filing of Federal tax liens against his property.

On June 23, 1953, petitioner transmitted, on Form 656–C, an offer to compromise his liability of $170,241.98, plus accrued interest, by the payment of $63,500. An amended offer seeking to compromise the total liability, plus accrued interest, for $100,000 was submitted by petitioner on December 14, 1953.

A remittance of $500 was submitted with the original offer on June 23, 1953, and petitioner made remittances of $500 during each month the offer was pending. No remittance was made by petitioner prior to the filing of his original offer in compromise on June 23, 1953.[2]

While the June 23, 1953, offer and the amended offer of December 14, 1953, were being considered in the office of the district director, a written agreement dated July 12, 1954, was entered into by petitioner and the district director under which petitioner agreed to sell certain real estate and remit the net proceeds to the district director, and the district director agreed to quitclaim any interest he held therein under the security deed. This agreement provided in part as follows:

THAT, at the time the said funds, to be not less than $29,000.00, are deposited with Paul Cobb, District Director of Internal Revenue, said funds shall be deposited in a Special Deposit Account of the said Director in conformity with established procedure to be applied on the offer in compromise submitted by James F. Keith when and if said offer is accepted by the Commissioner of Internal Revenue or his delegate; and,

THAT, in the event said offer in compromise is rejected by the Commissioner of Internal Revenue or his delegate, James F. Keith and Mabel S. Keith, jointly and severally agree that the funds so deposited in the Director's Special Deposit Account are to be applied directly to the outstanding Federal tax liabilities of James F. Keith as Paul Cobb shall direct and not be refunded to James F. Keith or Mabel S. Keith and they both hereby agree not to file a claim for refund or commence any action in any Court, State or Federal, for the refund or recovery of the amount so deposited.

On March 23, 1955, petitioner's offer in compromise submitted June 23, 1953, and his amended offer submitted December 14, 1953, were rejected. The remittances made up to March 23, 1955, totaled $39,500 and consisted of $500 per month for 21 months plus the net proceeds from the sale of realty on August 18, 1954, in the amount of $29,000. Of these amounts, the remittances made in the calendar year 1954 totaled $34,500.

On April 13, 1955, a check for $39,500 covering remittances made under his offer in compromise was drawn payable to petitioner. Petitioner endorsed this check in the collection officer's presence and left it with the district director. The amount of $39,500 was applied on March 23, 1955, by the district director against petitioner's tax liability as follows:

| Year | Income tax | Addition to tax, I.R.C. 1939, sec. 293(b) | Interest |
|------|-----------|-------------------------------------------|----------|
| 1942 | $4,365.43 | $2,093.44 | $2,515.86 |
| 1943 | 5,373.66 | 2,642.19 | 2,774.50 |
| 1944 | 18,655.91 | 1,079.01 | |

[2] Apparently, on or before June 23, 1953, petitioner and his wife had executed security deeds on certain real estate owned by them in favor of the district director pursuant to the proposal contained in petitioner's letter of November 21, 1952.

The Appellate Division of the Internal Revenue Service reviewed and sustained the district director's action of March 23, 1955, rejecting petitioner's offer and amended offer. During the period of appellate review, and from March 23, 1955, through July 1, 1955, petitioner made four monthly remittances of $500, remitting a total of $2,000. The district director applied the total of these remittances, as they were received, to the addition to tax assessed against petitioner for the year 1944.

On August 8, 1955, and September 1, 1955, petitioner remitted to the district director the proceeds from the sale of realty in the amounts of $15,341.73 and $63,742.21, respectively. The district director applied these remittances, as received, against petitioner's tax liability as follows: [3]

| Year | Income tax | Additions to tax, I.R.C. 1939 | | Interest |
| --- | --- | --- | --- | --- |
| | | Sec. 293(b) | Sec. 294(d)(2) | |
| Application of Aug. 8, 1955, remittance | | | | |
| 1944 | | $6,345.45 | | $8,412.97 |
| 1947 | $583.31 | | | |
| Application of Sept. 1, 1955, remittance | | | | |
| 1947 | $8,083.68 | $4,333.50 | $638.09 | $2,194.43 |
| 1946 | 22,852.19 | 11,426.10 | 1,371.91 | 7,385.53 |
| 1945 | 5,456.98 | | | |

On September 13, 1955, petitioner filed an offer in compromise proposing to compromise the balance of assessed tax, additions to tax, interest, and accrued interest [4] by the payment of $50,000. Petitioner was notified on March 12, 1956, that this offer had been rejected. Petitioner made monthly remittances of $500 under this offer from September 1955 through March 1956 totaling $3,500. On March 12, 1956, the district director applied this $3,500 to petitioner's liability for income tax for the year 1945.

Following rejection of the September 13, 1955, offer petitioner continued the $500 monthly remittances for the months of April, May, and June 1956. These remittances were applied, on the dates received, by the district director against petitioner's liability for income tax for the year 1945.

On July 11, 1956, petitioner submitted an offer in compromise proposing to compromise the remaining balance of assessed tax, ad-

[3] The application of these funds credits petitioner with 20 cents more than the amount actually remitted, which difference is unexplained.

[4] Stated on the offer to be: "Unpaid balances of assessed income tax, penalties and interest for the year 1944 $100.00; year 1945 $49,057.45; 1946 $300.00; and 1947 $200.00, a total of $49,657.45 plus all accrued and unassessed interest thereon to date of acceptance on years 1942 through 1947."

dition to tax, interest, and accrued interest for $61,367.03. Petitioner made monthly remittances of $500 under this offer. This offer was rejected on April 12, 1957. The sums received while this offer was pending, totaling $5,000, were applied on May 16, 1957, by the district director.

In the calendar year 1956 petitioner remitted $6,000 consisting of 12 monthly payments of $500 each.

None of the amounts remitted by petitioner while an offer was pending were treated as payments on his tax liability by the district director until such time as the offer was rejected. When petitioner's first offer in compromise was rejected on March 23, 1955, the district director applied the total amount remitted up to that time ($39,500) to petitioner's liability. This application was made first to tax, then to addition to tax, and then to interest, beginning with the liability for the earliest year and moving forward successively through the subsequent years in accordance with procedures established for treating such remittances by the Internal Revenue Service. During the period the offer was being considered by the district director the amounts received under that offer were held in a special deposit account. The same procedure was followed by the district director as to amounts received under subsequent offers, except that after all amounts assessed for the years 1942 through 1944 were satisfied the remittances were applied first to income tax, and then to additions to tax, and then to interest, beginning with the taxable year 1947 and moving backward successively through prior years instead of being applied first to the balance of liability for the oldest year, which was 1945. Petitioner at no time instructed the district director as to how any remittances received should be applied.

No offer in compromise submitted by petitioner was ever accepted and his total liability for the years 1942 to 1947, inclusive, has now been paid.

Respondent disallowed any deduction for interest paid on prior years' tax liability for the year 1954 on the ground that amounts remitted by petitioner to the district director during that year were merely deposits on an offer in compromise and were not "paid" on petitioner's liability for interest on prior years' taxes, and for the year 1956 on the same theory with respect to amounts remitted while an offer in compromise was pending, and with respect to payments applied during 1956 while no offer was pending, on the ground that such amounts were applied to payment of tax and not interest.

It is not disputed that petitioner is entitled to deduct the amounts paid on interest on prior years' tax liabilities. The issue is when payment was made.

Petitioner relies on section 163(a) of the Internal Revenue Code of

1954 [5] for the right to an interest deduction and on the theory that where the statute does not specify how payments made on a combined assessment of tax, additions to tax, and interest shall be applied, it should be applied to each in the proportion that each bears to the total assessment; which is the manner in which petitioner computed the amount of his interest deductions claimed on his returns. Section 292(a) of the Internal Revenue Code of 1939 provides that interest upon a deficiency shall be assessed at the same time as the deficiency, shall be paid on notice and demand, and shall be collected as a part of the tax.

Respondent relies on section 7809(b) of the Internal Revenue Code of 1954 [6] which provides that sums offered in compromise of tax liabilities shall be deposited by the officer receiving same with the Treasurer of the United States in a deposit fund account to be withdrawn and deposited as internal revenue collections upon acceptance of the offer in compromise, but which shall be refunded to the taxpayer if the offer is rejected. Respondent argues that under the above section and cases such as *Rosenman* v. *United States*, 323 U.S. 658 (1945), *Fred J. Arheit*, 31 T.C. 46 (1958), and *Standard Brewing Co.*, 6 B.T.A. 980 (1927), the remittances made by petitioner while his offers were pending were mere deposits and remained the property of petitioner, and hence could not be considered interest paid or accrued until applied to petitioner's liability for interest by the district director.

Petitioner recognizes that under ordinary circumstances amounts tendered in connection with offers in compromise must be deposited in the special deposit fund account and refunded to the taxpayer if the offer is rejected, but argues that these payments were not made under ordinary circumstances because they were made under agreements which waived his right to recover them in the event of rejection of the offer and permitted application thereof on his liability for the amounts assessed in any event and hence were irrevocably committed to the satisfaction of petitioner's liability when made. Petitioner distinguished the *Rosenman* and *Arheit* cases because they involved

---

[5] SEC. 163. INTEREST.

.(a) GENERAL RULE.—There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.

[6] SEC. 7809. DEPOSIT OF COLLECTIONS.

(b) DEPOSIT FUNDS.—In accordance with instructions of the Secretary or his delegate, there shall be deposited with the Treasurer of the United States in a deposit fund account—

(1) SUMS OFFERED IN COMPROMISE.—Sums offered in compromise under the provisions of section 7122;

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Upon the acceptance of such offer in compromise or offer for the purchase of such real estate, the amount so accepted shall be withdrawn from such deposit fund account and deposited in the Treasury of the United States as internal revenue collections. Upon the rejection of any such offer, the Secretary of his delegate shall refund to the maker of such offer the amount thereof.

payments into suspense accounts made before assessment and therefore were not in payment of any existing legal liabilities, and distinguishes the *Standard Brewing* case because the payment sought to be deducted there was made under circumstances requiring its return if the offer was rejected.

The above cases are not decisive of the issue before us. They do establish that where there has been no assessment and hence no fixed liability for tax, a remittance to the suspense account of the director does not constitute "payment" until an assessment has been made followed by satisfaction in whole or in part out of funds already deposited with the director. But, in our opinion, it does not necessarily follow that because there has been an assessment the remittance constitutes payment, particularly where the remittance is made in connection with an offer in compromise under an established statutory procedure. We think the fundamental rule is aptly stated by Judge Harlan in *Lewyt Corp.* v. *Commissioner*, 215 F. 2d 518, 522–523 (C.A. 2, 1954), affirming 18 T.C. 1245 (1952), reversed in part and affirmed in part on other issues 349 U.S. 237 (1955):

A remittance made in respect of an asserted or putative tax liability in no proper sense constitutes a tax "payment" except to the extent that it is effective to discharge such liability in whole or in part. That in turn depends upon the agreement of the taxpayer and the Commissioner or his representatives, acting within their powers, or upon whether the taxing authorities have a duty under the particular circumstances involved to accept the remittance as a payment of the tax in full or *pro tanto*.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

* * * In short, there can be no payment without satisfaction whether pursuant to or apart from an assessment. * * *

Respondent, in section 301.7122–1(d)(4), Proced. and Admin. Regs.,[7] appears to recognize that the taxpayer may waive his right to have the amounts tendered with an offer in compromise refunded to him if the offer is rejected. However, even though the taxpayer has waived his right to a return of his deposit in the event of rejection of his offer, this does not necessarily mean that the district director must or should apply the deposit on the tax liability immediately upon receipt thereof rather than to the deposit account until the offer is acted upon. *Standard Brewing Co., supra.* In fact, at least absent a specific direction by the maker that the deposit be immediately applied on the tax liability, it is doubtful that the district director would have authority to so apply it. The instructions in section 7809(b), and its predecessor section 3971(b) of the 1939 Code, are rather

---

[7] Section 301.7122–1(d)(4), Proced. and Admin. Regs., provides in part: "If an offer in compromise is withdrawn or rejected, the amount tendered with the offer, including all installments paid, shall be refunded without interest, *unless the taxpayer has stated or agreed that the amount tendered may be applied to the liability with respect to which the offer was submitted.*" (Emphasis supplied.)

See also *Morris Metcalf*, 16 B.T.A. 881 (1929); *Heffernan* v. *Alexander*, 48 F. 2d 855 (W.D. Okla. 1931).

specific. We find no regulations interpreting either of these sections.[8] However, this general instruction would seem to apply whether the tax liability has been assessed or not, because it refers generally to amounts remitted with offers in compromise, and experience indicates that offers in compromise are frequently submitted after an assessment has been made, particularly where the basis for the offer is inability to pay.

However, we need not decide what the situation would be if the taxpayer coupled a waiver of his right to a refund of the amount remitted if the offer in compromise is rejected with specific instructions to presently apply the amounts remitted to the tax liability, because, in our opinion, that was not done here.

The tax, additions to tax, and interest had already been assessed and there is nothing in the record to suggest that petitioner questioned his liability therefor. What evidence there is indicates petitioner admitted liability. We think that by his letter of November 21, 1952, followed by his offers in compromise submitted June 23 and December 14, 1953, by his written agreement pertaining to the sale of real estate dated July 12, 1954, and by his offer in compromise filed September 13, 1955, which on its face granted the director the right to apply all payments on the tax liability referred to if the offer was rejected, petitioner effectively waived his right to claim a refund of any remittances made pursuant to the offers in compromise. But each of the documents referred to above in which petitioner waived his right to a refund of the remittances was couched in executory language which made the waiver effective only when some action was taken on the offers in compromise. The letter of November 21, 1952, agreed that the monthly payments would be considered payments on account "in the event the offer should be rejected." The real estate agreement of July 12, 1954, specifically directed that the proceeds remitted to the district director should be deposited in a special deposit account in conformity with established procedure to be applied on the offer in compromise when and if the offer was accepted, and, in the event the offer was rejected, petitioner agreed that the funds so deposited in the special deposit account were to be applied directly to the outstanding tax liabilities as the director should direct, and not be refunded. And finally, the offer in compromise filed September 13, 1955, stated on its

---

[8] These provisions in section 7809(b) with respect to a special deposit account first appeared as an amendment to section 3210, Revised Statutes, adopted by section 1031(b) of the Revenue Act of 1924. Prior to that time the statute required the collector to deposit amounts offered in compromise into the Treasury as regular internal revenue collections, with refunds to be paid out of appropriations for that purpose. See Regs. 12, arts. 46 and 48. The committee reports on the Revenue Act of 1924 make no reference to section 1031(b) ; presumably because the amendment was considered a matter of internal administrative procedure within the Treasury Department. Subsequent to the adoption of the above amendment, Regs. 12, arts. 46 and 48, were amended to conform thereto. T.D. 3652, III–2 C.B. 412.

face "If offer rejected, Director reserves right to apply payments on the tax liability."

Nowhere does there appear any directive from petitioner to apply the remittances directly, and as paid, on the tax liabilities or any instructions as to how the remittances should be applied at any time. In fact the documents filed indicate a consciousness that the "established procedure" would be followed and were intended simply as a waiver of the right to a refund of the remittances in the event the offers in compromise were rejected. This is also supported by the actions of the parties which apparently conformed to that understanding.

Under such circumstances, we think the district director was under no duty to apply the remittances to payment of the liability immediately upon receipt and was acting entirely within the scope of his authority in depositing the remittances into the special deposit account until the offers were acted upon. This being so and the weight of authority holding that payments into a deposit account do not constitute payment, whether before assessment, *Rosenman* v. *United States, supra; Estate of Lawrence M. Colfelt, Jr.,* 35 T.C. 769 (1961) ; *Fred Draper,* 32 T.C. 545 (1959) ; *Fred J. Arheit, supra,* or after assessment, *Morris Metcalf,* 16 B.T.A. 881 (1929), we must conclude that the remittances made by petitioner pursuant to the offers in compromise were not payments on the liability until the offers were rejected. Hence, petitioners here are entitled to deductions for interest only in the years in which the remittances were applied to the tax liability.

On the second issue, petitioner cited no authority in support of his theory that the payments should be applied on a pro rata basis to tax, additions to tax, and interest, except that the application of payments should be made in a fair and equitable manner. 40 Am. Jur., Payment, sec. 120. In support of his position respondent relies on the general rule that a debtor making a voluntary partial payment of his indebtedness to a creditor may direct to which portion of the indebtedness the payment shall be applied, but if the debtor fails to appropriate the payment to a particular portion of his indebtedness, the creditor may apply it to such portion already due as he may see fit. *Nat. Bank, etc.* v. *Mechanics' Nat. Bank,* 94 U.S. 437 (1876) ; 40 Am. Jur., Payment, sec. 108 *et seq.*

There is also a "general rule" that an undesignated partial payment on a debt shall first be applied to the interest due before any part is applied to principal, *Barker* v. *Magruder,* 95 F. 2d 122 (C.A.D.C. 1938), 30 Am. Jur., Interest, sec 49; and it has been applied in determining the application of payments made on an agreed compromise of tax liabilities, *Lustig* v. *United States,* 138 F. Supp. 870 (Ct. Cl. 1956). However, this Court held that the rule is not applicable when

from the circumstances it may reasonably be inferred that the parties did not intend such unidentified payments to be appropriated to interest. *George S. Groves*, 38 B.T.A. 727 (1938). Cf. *William Justin Petit*, 8 T.C. 228 (1947); but cf. *Theodore R. Plunkett*, 41 B.T.A. 700 (1940), affd. 118 F. 2d 644 (C.A. 1, 1941).

In this case it is stipulated that petitioner at no time gave the district director any instructions as to how any remittances received should be applied, and that the application of the payments by the district director first to tax, then to additions to tax, and then to interest was in accordance with the procedure established for treating such remittances by the Internal Revenue Service.[9]  The evidence indicates that petitioner or his representatives were in close touch with the director's office in an effort to settle petitioner's liabilities throughout the years 1954–1956 and in all likelihood must have known how the payments were being applied by the director.  Both of the offers in compromise of September 13, 1955, and July 11, 1956, were for compromise of the specified unpaid balances of assessed income tax, additions to tax, and interest for the years 1944–1947, and the amounts shown for each year gave clear recognition of how the previous payments had been applied; and there is no indication petitioner ever objected to the manner of application.  And the real estate agreement dated July 12, 1954, provided that in the event the offer in compromise (of December 14, 1953) was rejected the proceeds of sale were to be applied (from the special deposit account) "directly to the outstanding Federal tax liabilities of James F. Keith *as Paul Cobb* [district director] *shall direct.*" (Emphasis supplied.)

From the above we conclude that the district director had an established procedure for applying payments of this sort which was followed in this case, and that petitioner had knowledge thereof and acquiesced therein.  We think that, absent instructions from petitioner to the contrary, the district director was not only justified in applying the funds as he did, but that in the interest of an orderly and equitable procedure for the application of such payments by whomever made, an established procedure should be followed.[10] Under the circumstances, and petitioner having failed to direct the

[9] In Rev. Rul. 58–239, 1958–1 C.B. 94, respondent published instructions for application of partial payments of tax, additions to tax, and interest assessed for 1 or more years, being generally to the effect that a payment tendered by a taxpayer with specific directions as to its application would be applied as directed, and amounts so applied to interest would be deductible, but where there are no specific instructions given, the amount will be applied by the district director first to tax, additions to tax, and interest, in that order, for the earliest year, and then the next succeeding year, etc.  We know of no published procedure relative to this matter prior to 1958, and it is our understanding that the application was left up to the individual district director.

[10] There is no explanation why the district director applied all remittances up to September 1, 1955, on the earliest years' liabilities first, and all remittances thereafter on the latest years' liabilities first, but no issue is raised with respect thereto.

application of his payments, we think the director's application of these payments was binding on both parties and that the general rule last mentioned above would not apply to require a different result.

In view of our conclusion on the first issue, there were no payments of interest in 1954, and none in 1956 while the offers in compromise were pending. The three payments totaling $1,500 made in 1956 after the offer of September 13, 1955, was rejected and prior to the offer of July 11, 1956, were applied by the district director to petitioner's liability for 1945 income tax. It follows that petitioner is not entitled to any deduction for interest paid on prior years' tax liabilities for either 1954 or 1956 and respondent's determination must be sustained.

*Decision will be entered for the respondent.*