K. E. MERREN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19847. Promulgated November 11, 1929.

*Pike Hall, Esq., W. Scott Wilkinson, Esq.,* and *C. Huffman Lewis, Esq.,* for the petitioner.

*Phillip M. Clark, Esq.,* and *C. C. Holmes, Esq.,* for the respondent.

OPINION.

MARQUETTE: The first question for our determination is whether income received by the petitioner after his marriage, in payment for his separate property sold by him before marriage, constituted separate, or community property.

The Louisiana statutes here pertinent read as follows:

ART. 2399. *Community.* Every marriage contracted in this State, super- induces of right partnership or community of acquets or gains, if there be no stipulation to the contrary.

\*       \*       \*       \*       \*       \*       \*

ART. 2402. *What belongs to the Community.* This partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estates which they may acquire during the marriage, \* \* \* even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase. *Merricks Civil Code of Louisiana, third edition.*

In our opinion the income here involved does not fall within the scope of article 2402 quoted above and hence it is not to be treated as community property. The property which was sold and which gave rise to the money, the income now under consideration, was the separate property of the husband. He had sold it and had completely divested himself of title thereto and dominion thereover prior to his marriage. At the time of the sale the amount to be received by the petitioner was definitely fixed and constituted an obligation due him. The right to receive the purchase price was itself property; it became vested in the petitioner prior to his marriage and could not, therefore, become community property under the Louisiana statute.

The fact that the petitioner's right to receive money was satisfied by payments made to him after his marriage does not, in our opinion, change the situation. The controlling principle is that, as between husband and wife, " when a right, legal or equitable, is acquired whether before or during marriage, all things of value into which the initial right develops by the performance of conditions, the running of time or the like, or if the initial right rests in obligation, all that which is obtained through the performance, discharge, satisfaction, enforcement or assignment of the obligation, are deemed in law to have been acquired as of the date of the acquisition of the initial right, and take the character, separate or common, of that right." McKay on Community Property, secs. 517 and 533. In *Estate of Jacob E. Moseman,* 38 La. Ann. 219, it appeared that Moseman, while a widower, took out insurance on his life. Later he married. At his death the question arose whether the proceeds of the life insurance belonged to the community or to his separate estate. The Supreme Court of Louisiana held that it was separate property, saying:

The contract creates certain rights and obligations which spring into existence the moment it is formed. Thus, at the date of the policies, Moseman acquired for himself the right to receive, at his death, through his executors, administrators, or assigns, the sums stipulated to be paid, subject to the condition of compliance with his own engagements to pay the premiums as they fell due. This condition having been complied with " has a retrospective effect to the day that the engagement was contracted." C. C. 2041. The character of the interest and of the ownership thereof takes its impress from the date of the contract.

The decision cited is directly in point and is determinative of the question before us.

The next question is whether the 12,000 shares of stock held in escrow during the year 1920 should be considered income to the petitioner for that year, and if so, at what valuation.

The petitioner made his returns upon the cash receipts and disbursements basis. He did not receive any stock in the company during the taxable year, but he did receive a receipt or, as he calls it, an escrow certificate entitling him to shares of stock when it was released from escrow. The release from escrow could not take place until after the close of 1920. All of this was known and agreed to by the petitioner when he sold his oil lease. In our opinion, the receipt for stock in escrow did not constitute income to the petitioner. It was no more than evidence of a payment, in stock, due to the petitioner and to be satisfied after the year 1920. Under the well-settled rule, a citizen is exempt from taxation unless the tax is imposed by clear and unequivocal language. And in cases of reasonable doubt, that doubt must be resolved in favor of the citizen and against the Government. *Mutual Benefit Life Insurance Co.* v. *Herold*, 198 Fed. 199; *Spreckles Sugar Co.* v. *McClain*, 192 U. S. 397. See, also, *Anna M. Harkness*, 1 B. T. A. 127; *Anthony Schneider et al.*, 3 B. T. A. 920.

We are also of opinion that the promissory note for $19,125, given to the petitioner, but not paid during the taxable year, did not constitute income to one on the cash receipts and disbursements basis. The note had no fair market value, nor was it readily convertible into cash, as is evidenced by the petitioner's unsuccessful efforts to sell it. There was no agreement between the parties that the note should operate to discharge the debt due to the petitioner and, in the absence of such an agreement, it did not so operate. *Segrist* v. *Crabtree*, 131 U. S. 287.

As to the last error assigned by the petitioner, clearly the $5,438.64 received by him in 1921 from the proceeds of the oil runs should not be included in his gross income for 1920. It was not received during that year, nor was there any assurance during the year 1920 that such money would ever be forthcoming for the petitioner.

The petitioner's income tax for the year 1920 should be recomputed, including as gross income for that year the cash payments received by him during the year, amounting to $130,436.36, but omitting from such gross income the items of the capital stock, the promissory note, and the oil proceeds paid in 1921.

*Judgment will be entered under Rule 50.*