WILLIAM A. HINES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARIETTA R. MARLOW, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ERNEST W. MARLOW, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 87399, 87400, 87401. Promulgated October 28, 1938.

*William A. Hines, Esq.,* pro se.

*Ernest W. Marlow, Esq.,* for petitioners Ernest W. Marlow and Marietta R. Marlow.

*John D. Kiley, Esq., L. H. Rushbrook, Esq., Philip D. Harris, Esq.,* and *Oliver L. Bright, Esq.,* for the respondent.

1066

**OPINION.**

DISNEY: Aside from interest in the amount of $2,500 for the six-month period prior to October 1, 1933, which was returned as taxable income, none of the fee or interest thereon was actually received by the partnership in 1933. The respondent included the amount of the fee, plus interest in the amount of $1,250 for the period from October 1, 1933, to the close of the year, in gross income of the partnership on the ground that it was constructively received in 1933. He adheres to the doctrine upon brief before us.

The inclusion in the partnership's gross income of an amount for interest accrued on the full amount of the fee for the three-month

period after October 1, 1933, was a clear violation of the well settled rule that taxpayers on the cash basis are not subject to tax on accrued items of income. *Massachusetts Mutual Life Insurance Co.* v. *United States*, 288 U. S. 269; *Great Southern Life Insurance Co.*, 33 B. T. A. 512 (521). On this issue the respondent is reversed.

It was announced in *John A. Brander*, 3 B. T. A. 231, that the doctrine of constructive receipt should be sparingly applied. See also *Adolph Zukor*, 33 B. T. A. 324. In *Cecil Q. Adams*, 20 B. T. A. 243; affd., 54 Fed. (2d) 228; we said: "But, in general, income should not be construed to have been received prior to the date of actual receipt except where a taxpayer turns his back upon income or does not choose to receive income which he could have if he chose." The doctrine will not be applied except in a clear case. *Hal E. Roach*, 20 B. T. A. 919. In *C. E. Gullett*, 31 B. T. A. 1067, we said:

\* \* \* that amounts due from a corporation but unpaid, are not to be included in the income of an individual reporting his income on a cash basis unless it appears that the money was available to him, that the corporation was able and ready to pay him, that his right to receive was not restricted and that his failure to receive resulted from exercise of his own choice.

Other statements of the doctrine are to the same effect. *William Parris*, 20 B. T. A. 320; *Helvering* v. *Gordon*, 87 Fed. (2d) 663.

The petitioners argue that the agreement between the partnership and the Foundation was the only one entered into for payment of the fee and that we must look to it alone for the amount to be paid and the time of payment. They have overlooked the fact that by a provision of the agreement the liability of the Foundation was limited to the unpaid portion of the fee at the time of completion of the transfer of the residuary estate. This term of the agreement gave the executors the right to pay part or all of the fee to the partnership at any time prior to completion of the transfer. Thus the understanding had with the executors was not limited, as alleged, to mere approval of the reasonableness of the fee, but conferred upon the partnership no right to require payment from the executors.

The employment of the petitioners as counsel rendered the executors personally liable for a reasonable fee, subject to reimbursement by way of a credit in their accounts. 24 C. J. 66; *Parker* v. *Day*, 155 N. Y. 383; 49 N. E. 1046; *Platt* v. *Platt*, 105 N. Y. 488; 12 N. E. 22. Counsel in such cases do not acquire a lien against assets of the estate for the amount of their charges. *Platt* v. *Platt, supra; Waite* v. *Willis*, 42 Ore. 288; 70 Pac. 1034; *Rickel* v. *Chicago, Rock Island & Pacific Railway Co.*, 112 Iowa, 148; 83 N. W. 957. The executors did not at any time in 1933 unqualifiedly agree to pay the fee or set aside in an account or otherwise a fund from which to pay it. The partnership limited its right to receive payment from the executors to such amount as the executors, in their discretion, elected to pay prior to the transfer

of the assets of the estate to the Foundation. They made no payment, and when the transfer had been accomplished the executors were under no obligation to pay until at least after default by the Foundation. The terms of the agreement with the Foundation did not compel it to pay the fee within the taxable year, and none of it was paid.

It is stipulated that the partnership was retained "to attend to the probate of said will and to attend to all matters incident to the administration of the estate and to the distribution of the assets thereof." For services as counsel for the administration of the estate it was agreed between the partnership and the executors, in 1933, that $250,000 was a reasonable fee, but the executors did not agree to pay such amount in 1933 or otherwise, and never paid it. The statute of New York provides that commissions of executors or administrators are not earned until the services have been rendered and the account settled. The same applies in logic to the attorneys' fees here involved. At the time of discussion of the reasonableness of $250,000 as attorneys' fees, and at the time of the proposition between the attorneys, executors, and residuary legatee on April 24, 1933, the attorneys' services had not been completed. Federal estate tax proceedings were still pending, the executors' final account had not been settled in the ordinary manner of probate, and, though the statute permitted that such final accounting be dispensed with by settlement and distribution satisfactory to the residuary legatee, that was not done until December 1933. Until that date it is obvious that the attorneys had no right to demand their fee from the executors. By and previous to that time, however, a tripartite agreement between the attorneys, executors, and residuary legatee had provided for payment of attorneys' fees by the residuary legatee throughout a possible period of five years. The rights against the residuary legatee had their inception upon the legatee's taking over the assets—but the attorneys' services were not yet finished. Clearly, we think, the attorneys could not successfully have maintained an action against the executors for the $250,000 fee at the time they agreed with the executors and residuary legatee to accept it within five years. They had not yet performed perhaps the most important part of the stipulated services, "to attend to all matters incident to * * * the distribution of the assets" of the estate. In fact, since the partnership considered the activities of the Friedsam Foundation, the residuary legatee, as a final step in the completion of the administration of the estate of the decedent and a continuation of the legal services of administering it, and will not charge further fee for services rendered it, it is apparent that the services, payment for which is here involved, were not completed even with full transfer of the assets of the estate to the Friedsam Foundation. No principle of constructive receipt requires, we think, that the attorneys' fees not yet fully earned, and not yet available to

the attorneys for that reason, be considered income received, contrary to agreement (entered into prior to right to make demand) that they be received over a possible period of five years—as in fact they were received.

While questions of the kind involved here are controlled by the peculiar facts of the case, the facts prevailing in several decided cases suggest the answer here. In *Edwards* v. *Keith*, 231 Fed. 110, the court, in deciding that commissions received by an insurance agent on renewal premiums paid on policies of insurance written prior to March 1, 1913, are includable in taxable income in the year of receipt, pointed out that counsel who completed his services for a client in October 1915 and received his pay therefor in February 1916, pursuant to a bill rendered in December 1915, was not taxable until 1916 on the amount received. In *Freeman* v. *United States*, 71 Fed. (2d) 969; certiorari denied, 293 U. S. 621, the taxpayer had the power, as executor of three estates, to pay himself in 1916 for services rendered in that year, or wait until he prepared partial or final accounts in subsequent years. He exercised the right to have the services he performed in 1916 paid in 1917, when he prepared partial accounts. The court held that the amount received in 1917 was taxable in that year, and that no part of it could be allocated to 1916. In *Charles Stewart Mott*, 30 B. T. A. 1040; affd., 85 Fed. (2d) 315, the taxpayer as trustee of trusts created by him for the benefit of his children had the right under the provisions of the trust agreements to deduct and retain annually as compensation for his services a sum equal to 3 percent of the gross income of the trusts. He made no charge for his services and received nothing. It was held that the doctrine of constructive receipt did not apply. The case of *S. A. Wood*, 22 B. T. A. 535, is to the same effect.

The case of *William Parris, supra*, is not to the contrary. There the amount owing for oil sold was standing to the credit of the taxpayer on the books of the pipe line company and was available to him upon presentation of an executed division order. Here there was no unqualified agreement on the part of the executors or the residuary legatee to pay in 1933 upon demand. The income was not subject to the command of the partnership and at no time in 1933 were the petitioners in a position to enjoy the income as in *Corliss* v. *Bowers*, 281 U. S. 376. It was error for the respondent to include the fee in gross income of the partnership for 1933 on the ground that it was constructively received.

The respondent contends in a supplemental reply brief that the agreement of the Foundation to pay the fee should be treated as the equivalent of the cash received within the taxable year. He argues that the agreement to pay was an evidence of indebtedness received in payment for services and "fully equivalent to a promissory note, or a certificate of stock" and that it "represented a payment of the claim in property by the debtor."

Gross income includes compensation for services rendered "in whatever form paid." Sec. 22 (a), Revenue Act of 1932. Regulations promulgated under the statute provide that "Where services are paid for with something other than money, the fair market value of the thing taken in payment is the amount to be included as income." Art. 53, Regulations 77.

Numerous cases are cited by the respondent as establishing the doctrine that income may be derived in the form of money's worth. The cases relied upon involved in general the receipt in connection with sales and as compensation for services rendered, stock, bonds, notes, or tangible property. It is well settled that property of that sort may be taxed to the recipient at its fair market value. The respondent does not claim, aside from the constructive receipt theory already discussed, that the right reserved by the executors to pay the fee in whole or in part prior to the transfer of the residuary estate to the Foundation was equivalent to receipt by the partnership of taxable income in the amount of $250,000 or any other amount. He relies only upon the promise to pay made by the residuary legatee as resulting in taxable income to the partnership in 1933.

The agreement of the Foundation to pay the fee was evidenced by the letter of April 24, 1933, and a resolution adopted by the Foundation on April 27, 1933, which the respondent characterizes as a chose in action and claims "admittedly had a value of at least $250,000." Generally a promise to pay a specified sum of money in the future does not create more than an account receivable in the hands of the creditor, a nontaxable item of taxpayers reporting, as here, on the cash basis. The result would have been no more if the executors, instead of reserving a right to pay prior to the happening of a certain event, had unconditionally promised to pay, for instance, on July 1, 1934. The undertaking of the Foundation created an unconditional obligation on its part to pay a definite sum of money sometime within five years and in its essential characteristics was no different from an ordinary promise to pay by a person primarily liable. The written promise of the Foundation was a property right and no doubt had some value to the partnership. "Such rights are sold, if at all, only by seeking out a purchaser and higgling with him on the basis of the particular transaction" and ordinarily do not have a fair market value. *Bedell* v. *Commissioner*, 30 Fed. (2d) 622. The respondent has never determined, and the petitioners do not admit, that the promise of the Foundation had a fair market value in 1933 of any amount.

We fail to see that the partnership, by agreeing to look to the Foundation for payment within five years, acquired, for income tax purpose, something unlike what it had before the promise was given.

In general, taxation is levied upon profits realized and not deferred. *Commissioner* v. *Garber*, 48 Fed. (2d) 526. In *San Jacinto Life Insurance Co.*, 34 B. T. A. 186, a petitioner on a cash basis received a demand promissory note as additional evidence of liability of a maker for overdue interest on a series of notes. We held that there was no income received. In *Great Southern Life Insurance Co.*, *supra*, a note and the security therefor and a claim for overdue interest was surrendered in exchange for certificates of indebtedness of debtor's receiver, and we were of the opinion that the transaction was a mere renewal, resulting in no income until payment or other disposition of the certificates received.

In *William J. Kyle*, 15 B. T. A. 1247, affd., 43 Fed. (2d) 291; certiorari denied, 282 U. S. 896, we held that a judgment obtained in 1915 for legal services rendered prior thereto did not represent payment of the claim and that the taxpayers, who reported their income on the cash basis, did not realize taxable income from their services until 1920, when the judgment was paid. Herein, the rights acquired by the partnership in 1933 were inferior to the rights it could have acquired if it had been in a position to reduce its claim to judgment, or had actually done so. As a judgment creditor it could have levied upon property, whereas under the terms of the agreement entered into it was in no position to demand payment in 1933. Yet the above citation indicates that even a judgment obtained would not be taxable in 1933 as income.

Since herein the agreement among the partnership, executors, and residuary legatee provided for payment by the residuary legatee less any amounts paid by executors prior to completion of transfer of the assets of the estate, it is apparent that the promise of residuary legatee to pay was not accepted by the partnership wholly in lieu of rights against the executors; but, assuming that it was so accepted, it is obvious that, as in fact appears on the face of the agreement itself, the services of the attorneys' partnership had not been completed and must continue further. An implied agreement for the continuation and completion of such services is plain. Therefore there was a continuation of contractual rights held by the partnership, involving personal services, the failure to perform which would affect and give rise to defense to the obligation to pay. The new agreement was not accepted *as payment*, but merely as another agreement *to pay*, in part for services yet to be rendered. No promissory note was received, and no security given. It would have required evidence outside of the agreement as to whether such services had been performed, a question any prospective purchaser of the agreement would consider. *C. W. Titus*, 33 B. T. A. 928, and cases cited. Such a situation is not one, we think, which lends itself to the application of the principle of receipt of equivalent of cash. The line of division be-

tween contracts so to be considered, and those to be excluded, is not easy to trace, but here the partnership received nothing more from the Foundation than nonnegotiable written evidence of an agreement to pay a definite sum of money at an indefinite time in the future, an account receivable not includable in its gross income. We think this situation is properly classed outside the limits of those where property may be considered equivalent to cash.

The partnership received no property from the Foundation in 1933 taxable as income for services rendered.

*Decision will be entered for the petitioners.*