ACER REALTY COMPANY, A CORPORATION, PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102119. Promulgated October 14, 1941.

*R. Shad Bennett*, for the petitioner.
*Carroll Walker, Esq.*, for the respondent.

336

OPINION.

LEECH: The first issue presents only the question of the propriety of respondent's disallowance of the deduction of a portion of the salaries paid by petitioner to its president and secretary-treasurer, respectively, during the tax years, as ordinary and necessary expenses.

Under section 23 (a) of the Revenue Act of 1936, there are allowed as deductions "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered * * *."

Petitioner has the burden of showing that the salaries of its officers were "ordinary and necessary" expenses in carrying on its business. *Wickwire* v. *Reinecke*, 275 U. S. 101; and in determining this a strict application of the statute is required. See *Welch* v. *Helvering*, 290 U. S. 111.

Petitioner does not contend that prior to the start of its building program its activities were such as to justify the payments made by it to its two officers as salaries in the three taxable years here in question. In fact, the evidence presented by it is directed to establishing the fact that the services rendered by these two in supervising and directing the building were equivalent to and in the nature of the services which would have been rendered by a general contractor and supervising architect and that by the employment of these two individuals that cost, which would have exceeded the salaries paid, was saved. Petitioner seeks to justify the amount paid as salary to each, wholly on the ground of the value of these particular services in the building program. That the payments were made for these services is further shown by the fact that they were discontinued as soon as the building program was finished. Moreover, the payments to these two officers were substantially proportionate to their respective stock ownership in petitioner. Each time such salaries were increased this proportion was maintained and, although we are not advised as to the income of the corporation for the first two of the three years here in question, it is established that for the fiscal year 1938 these salaries were largely in excess of the gross income reported by petitioner for that year.

Had petitioner employed a general contractor and supervising architect in its construction, there is no question but that expense would have constituted a building cost, not deductible in computing taxable income. If, instead of this, it employs and pays its two officers to perform that service, is such payment to be considered different in character? We think not. In *Federal Plate Glass Co.*, 6 B. T. A. 351, we held as capital expenditures amounts paid by the taxpayer to its general manager and plant superintendent for services over and beyond their usual and customary duties and analogous to services of designing and supervising engineers in the completion of its plant.

We see no reason here to question the amounts paid in each year as reasonable compensation for the services rendered. However, it is clear that these payments were not made as compensation of these two officers, as such. They were made for unusual, nonrecurrent services, the cost of which is represented now in the value of the capital assets thus acquired and now owned by petitioner. Compensation paid individuals for services incidental to the construction or improvement of buildings, or in connection with the acquisition of capital assets, is a capital expenditure and not an ordinary and necessary expense of carrying on business. *Welch v. Helvering, supra; W. P. Brown & Sons Lumber Co.*, 26 B. T. A. 1192; *Columbia Theatre Co.*, 3 B. T. A. 622; *Houston Natural Gas Corporation*, 34 B. T. A.

228; affd., 90 Fed. (2d) 814; certiorari denied, 302 U. S. 722. Respondent is affirmed on this issue.

Petitioner contends that the respondent, in arguing for the first time on brief that the proof indicated the expenditures in controversy to be capital, has injected a new issue in the case. This position has no merit. The issue here is whether these payments, in fact, represented reasonable allowances for services performed in carrying on business, and the burden of establishing that fact rests upon petitioner. Respondent contends merely that petitioner's proof not only fails to establish the fact necessary to sustain his deduction, but, on the other hand, shows affirmatively that the expenditures, even if ordinary and necessary, are nondeductible in character. That deductibility has always been the issue.

The second issue is whether or not petitioner was in constructive receipt of rent due it from its principal tenant, the sanatorium. Petitioner maintains its accounts upon a cash basis and in the fiscal year 1938 owed the sanatorium $10,500 for advances made it by the latter. In that year the sanatorium was obligated to petitioner for a rental of $18,000, but after paying $9,300 of this amount it ceased to make further payments, leaving a balance of rent due in the amount of $8,700. It is respondent's position that petitioner was in constructive receipt of this latter amount since it had the right to offset it on its books against the amount it owed the sanatorium, although no such book entry was actually made during that year.

The doctrine of constructive receipt is an "artificial concept which must be sparingly applied", *John A. Brander*, 3 B. T. A. 231; and then only under "unique circumstances", *Hal E. Roach*, 20 B. T. A. 919. Its "primary function is to bring about a fair and reasonable application of the income tax" and "its application may vary with varying circumstances", *Southern Pacific Co.*, 21 B. T. A. 990; and the test as to its applicability is "whether the debtor has funds standing to the credit of the taxpayer which the debtor is able to pay and which are available and unqualifiedly subject to the taxpayer's demand", *Samuel Keller Jacobs*, 22 B. T. A. 1166.

Does this case come within the principles applicable to constructive receipt? In our opinion it does. It is true that the debts of the sanatorium and petitioner to each other were carried as separate obligations on their respective books. Although there is no evidence that an offset was not entered on its books by the sanatorium in the tax year, petitioner made no offsetting entry.

The evidence here in connection with this mutual indebtedness is contained in the testimony of the present president of petitioner, who is the husband of Anna M. Bennett, and one Rothweiler, who was at all times here involved a director of petitioner and auditor for both petitioner and the sanatorium. Both of these witnesses were familiar

with all the conditions surrounding the transactions between petitioner and the sanatorium. Bennett in his testimony admits that petitioner had the right to make the offset but contends that it was not required to do so but could, if it desired, postpone the credit to a future period. Rothweiler testifies that it was intended that the balance due petitioner from the sanatorium was to be offset against petitioner's indebtedness to the latter and that the offsetting entry was not immediately made because of the fact that it was anticipated that certain of the new buildings would be ready for occupancy before the close of the year, requiring an increase in the rent due for that year from the sanatorium. His testimony is that petitioner delayed making the offsetting entry until the determination of the exact amount which would be due. But the buildings in question were not completed for occupancy until some months after the tax year.

It is true that, at least under some circumstances, "mutual debts do not *per se* extinguish each other." But here, we think, the intention of the parties was that these mutual debts were to be treated as parts of one transaction. The offset of one debt against the other was intended and petitioner had an absolute right to make it during the tax year. Cf. *Bailey* v. *Commissioner*, 103 Fed. (2d) 448. We think that the requirements of constructive receipt are satisfied and that petitioner could not, by merely delaying the making of a book entry, postpone this rent receipt to a future period. Respondent is affirmed.

The remaining issue upon the imposition of a 5 percent negligence penalty under section 293 of the Revenue Act of 1936 we have disposed of by finding that there was no negligence or intentional disregard of rules and regulations. Respondent is reversed on this issue.

*Decision will be entered under Rule 50.*