R. E. HUGHES, JR., AND MARTHA HUGHES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

CALVIN B. MORGAN AND RITA H. MORGAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2918–62, 2919–62. Filed September 2, 1964.

*D. Paul Alagia, Jr.,* and *J. B. Brown,* for the petitioners.
*S. Earl Heilman,* for the respondent.

FORRESTER, *Judge:* Respondent has determined deficiencies in income tax for the year 1959 in the amount of $3,108.64, docket No. 2918–62, and in the amount of $3,315.59 in docket No. 2919–62. The sole issue is whether petitioners R. E. Hughes, Jr., and Calvin B. Morgan each constructively received salary in the amount of $7,500 during 1959, which was not included on petitioners' returns for such year.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found, all stipulated facts being incorporated herein by this reference.

Petitioners are husbands and wives, all residents of Leitchfield, Ky., and they respectively filed their joint Federal income tax returns for the year in issue on the cash basis with the district director of internal revenue for the district of Kentucky. The sole issue before us concerns determined understatements of salary by R. E. Hughes, Jr., and Calvin B. Morgan, who will be referred to hereinafter as petitioners.

Petitioners have been engaged in the business of selling building materials at retail, and contracting for and constructing commercial and public buildings and a few residential buildings since 1947, conducting such business as a partnership under the name and style "John S. Hughes and Son."

Such business was operated upon a calendar year basis. For the calendar year 1958 it earned and distributed equally to petitioners approximately $65,000.

On December 31, 1958, petitioners formed a Kentucky corporation styled "John S. Hughes and Son, Inc.," to which they transferred the assets of their partnership in exchange for 1,800 of its authorized 2,000 shares of $100 par value stock, each petitioner receiving 900 shares of such stock.

Petitioner Morgan continued as owner of the 900 shares issued to him for all times relevant to the issue in this case, but petitioner Hughes gave and transferred 240 of his shares to his three children (80 shares to each) on or about December 16, 1959, so that at all relevant times thereafter the 900 shares originally issued to petitioner Hughes were owned, 660 shares by petitioner Hughes and 80 shares each by his three children.

At all relevant times John S. Hughes & Son, Inc., was a so-called "tax-option" corporation under subchapter S, sections 1371 through 1377 of the Internal Revenue Code of 1954,[1] with a fiscal year ending June 30.

Since its inception petitioners and their wives have served as the four directors of John S. Hughes & Son, Inc., which will hereinafter be referred to as the corporation.

At the first meeting of the corporation's board, held on December 31, 1958, bylaws were adopted and petitioners were named as president and as secretary and treasurer of the corporation. Excerpt from the minutes effecting such elections follows:

it was resolved to proceed to the election of officers to hold office until the next annual meeting of the Board of Directors or until their successors are elected and qualified.

---

[1] All references are to be to the Internal Revenue Code of 1954.

R. E. Hughes, Jr. was nominated to the office of President of the company and no other nominations being made, Mr. Hughes, receiving the favorable vote of every director present, was duly elected President and his compensation was fixed at the rate of $400.00 per month with the understanding that a bonus will be paid as additional compensation for his services at the end of the year if the company earns a satisfactory profit, such bonus to be subject, however, to the approval of this Board of Directors.

Calvin D. Morgan was nominated for the offices of Secretary and Treasurer of the company and no other nominations being made, Mr. Morgan, receiving the favorable vote of every director present, was duly elected to the combined offices of Secretary and Treasurer and his compensation was fixed at the rate of $400.00 per month with the understanding that a bonus will be paid as additional compensation for his services at the end of the year if the company earns a satisfactory profit, such bonus to be subject, however, to the approval of this Board of Directors.

Pertinent excerpts from such bylaws follow:

ARTICLE I—MEETING OF STOCKHOLDERS

(a) *Annual Meetings.* The annual meetings of the stockholders of the corporation shall be held at the office of the company at Leitchfield, Kentucky, or such other appropriate place in the State of Kentucky as may be designated for such meeting on the third Tuesday in February [1] of each year at which time there shall be elected a Board of Directors and the transaction of such other business as may properly come before the meeting.

*       *       *       *       *       *       *

Annual meetings of the Board of Directors shall be held at the office of the company on the same date of an [sic] immediately following the annual meeting of stockholders.

*       *       *       *       *       *       *

The officers shall be chosen by the Board of Directors by a majority vote and shall hold office for one year or until their successors are elected and qualified, provided, however, the officers elected at the first meeting of the Board of Directors shall hold office until the next annual meeting of the said board.

ARTICLE V—COMPENSATION OF OFFICERS

The salaries of the officers of the corporation shall be fixed by the Board of Directors.

[1] Annual meeting date changed to first Thursday in August of each year by resolution adopted at a meeting of the Board of Directors on 2/16/60.

Petitioners continued working full time for the corporation as they had for the partnership and at a special meeting of the board held on July 15, 1959, the operations and financial condition of the corporation were considered and discussed and the following resolution was adopted:

RESOLVED: That the compensation as set up on the company's books for the President for the six months period ended June 30, 1959, in the amount of $10,500.00, and being for services rendered during that period, and that the compensation as set up on the company's books for the Secretary and Treasurer, in the amount of $10,500.00, also for services rendered during that period, be, and the same are hereby, approved and confirmed.

The next meeting of the corporation's board was held on February 16, 1960. The following excerpt from the minutes of such meeting is relevant:

The Chairman stated that the Board of Directors should give consideration at this time to the authorization and approval of compensation to be paid to the officers for their services rendered during the fiscal year ending on June 30, 1960. After a discussion of this matter and upon motion made, seconded and carried, it was

RESOLVED: That the compensation of R. E. Hughes, Jr., President, be fixed at $15,000.00 for the year ended June 30, 1960; and that the compensation of Calvin B. Morgan, Secretary and Treasurer, be likewise fixed at $15,000.00 for the year ended June 30, 1960; and that the aforesaid amount be accrued and credited on the books of the corporation and shall be payable to them upon their demand.

At the annual directors' meeting held on August 4, 1960, R. E. Hughes, Jr., was reelected as president and Calvin B. Morgan was reelected as secretary and treasurer of the corporation. The next succeeding meeting of the board was a special meeting which was held on June 23, 1961, at which meeting compensation for the services of petitioners as president and as secretary and treasurer, respectively, for the year ended June 30, 1961, was approved and authorized.

The partnership, John S. Hughes & Son, had maintained drawing accounts on its books for petitioners. The corporation from its inception has maintained accounts numbered 131 and 132 for R. E. Hughes, Jr., and Calvin B. Morgan, respectively, reflecting both debits and credits as between them and the corporation, on which accounts Hughes and Morgan could withdraw reasonable amounts of money from the business without the other's permission. These accounts were at all times reflected as a debit or a credit as the case might be on the company's balance sheets. Details of such accounts for the corporation's first 18 months were as follows:

## R. E. HUGHES, JR., ACCOUNT No. 131

| Date | Description | Charges | Credits | Debit balance | Credit balance |
|---|---|---|---|---|---|
| *1959* | | | | | |
| Jan. 31 | | $179.68 | | $179.68 | |
| Do | | 2,616.45 | | 2,796.13 | |
| Do | | 354.65 | | 3,150.78 | |
| Do | | 104.87 | | 3,255.65 | |
| Feb. 28 | | 126.48 | | 3,392.63 | |
| Do | | 600.00 | | 3,982.63 | |
| Mar. 31 | | 136.98 | | 4,119.61 | |
| Do | | 600.00 | | 4,719.61 | |
| Apr. 30 | | 76.98 | | 4,796.59 | |
| Do | | 6,368.90 | | 11,165.49 | |
| May 31 | | 211.48 | | 11,376.97 | |
| Do | | 600.00 | | 11,976.97 | |
| Do | | 65.68 | | 12,042.65 | |
| June 30 | | 191.98 | | 12,234.63 | |
| Do | | 2,095.25 | | 14,329.88 | |
| Do | | 300.00 | | 14,629.88 | |
| Do | | | $10,500.00 | 4,129.88 | |
| Do | | 120.00 | | 4,249.88 | |
| Do | | | 3,271.78 | 978.10 | |
| July 1 | | | | 978.10 | |
| July 31 | | 215.08 | | 1,193.18 | |
| Do | | 1,191.00 | | 2,384.18 | |
| Do | | 18.00 | | 2,402.18 | |
| Aug. 31 | | 166.98 | | 2,569.16 | |
| Do | | 842.50 | | 3,411.66 | |
| Sept. 30 | | 86.98 | | 3,498.64 | |
| Do | | 2,554.10 | | 6,052.74 | |
| Oct. 31 | | 141.48 | | 6,194.22 | |
| Do | | 600.00 | | 6,794.22 | |
| Do | | 1.42 | | 6,795.64 | |
| Nov. 30 | | 166.98 | | 6,962.62 | |
| Do | | 1,570.00 | | 8,532.62 | |
| Dec. 31 | | 166.98 | | 8,699.60 | |
| Do | | 500.00 | | 9,199.60 | |
| Do | | 49.50 | | 9,249.10 | |
| *1960* | | | | | |
| Jan. 31 | | 90.00 | | 9,339.10 | |
| Do | | 3,352.50 | | 12,691.60 | |
| Feb. 29 | | 150.00 | | 12,841.60 | |
| Do | | 500.00 | | 13,341.60 | |
| Do | | 115.80 | | 13,457.40 | |
| Mar. 31 | | 144.54 | | 13,601.94 | |
| Do | | 1,000.00 | | 14,601.94 | |
| Do | | 12.04 | | 14,613.98 | |
| Apr. 30 | | 219.50 | | 14,833.46 | |
| Do | | 2,825.88 | | 17,659.36 | |
| May 31 | | 148.96 | | 17,808.32 | |
| Do | | 500.00 | | 18,308.32 | |
| June 30 | | 131.98 | | 18,440.30 | |
| Do | | 2,440.70 | | 20,881.00 | |
| Do | | 201.84 | | 21,082.84 | |
| Do | | | 242.50 | 20,840.34 | |
| Do | | | 15,000.00 | 5,840.34 | |
| Do | | 144.02 | | 5,984.34 | |
| Do | | | 450.00 | 5,534.34 | |
| Do | | | 5,000.00 | 534.34 | |

C. B. MORGAN—ACCOUNT NO. 132

| Date | Description | Charges | Credits | Debit balance | Credit balance |
|---|---|---|---|---|---|
| *1959* | | | | | |
| Jan. 1 | | | $6,170.12 | | $6,170.12 |
| Jan. 31 | | $176.98 | | | 5,993.14 |
| Do | | 8,085.12 | | $2,091.98 | |
| Do | | 69.18 | | 2,161.16 | |
| Feb. 28 | | 300.00 | | 2,461.16 | |
| Do | | 146.98 | | 2,608.14 | |
| Mar. 31 | | 151.38 | | 2,759.52 | |
| Apr. 30 | | 4,669.87 | | 7,429.39 | |
| Do | | 149.73 | | 7,579.12 | |
| May 31 | | 6.14 | | 7,585.26 | |
| Do | | 129.18 | | 7,714.44 | |
| June 30 | | 2,335.00 | | 10,049.44 | |
| Do | | 13.20 | | 10,062.64 | |
| Do | | 300.00 | | 10,362.64 | |
| Do | | | 10,500.00 | | 137.36 |
| Do | | 120.00 | | | 17.36 |
| July 1 | | | | | 17.36 |
| July 31 | | 186.98 | | 169.62 | |
| Do | | 775.00 | | 944.62 | |
| Do | | 11.18 | | 955.80 | |
| Aug. 31 | | 146.98 | | 1,102.78 | |
| Do | | 395.30 | | 1,487.08 | |
| Sept. 30 | | 146.98 | | 1,645.06 | |
| Do | | 2,035.00 | | 3,680.06 | |
| Oct. 31 | | 229.73 | | 3,909.79 | |
| Do | | 900.00 | | 4,809.79 | |
| Nov. 30 | | 156.98 | | 4,966.77 | |
| Do | | 275.00 | | 5,241.77 | |
| Dec. 31 | | 231.93 | | 5,473.70 | |
| Do | | 500.00 | | 5,973.70 | |
| Do | | 39.45 | | 6,013.15 | |
| *1960* | | | | | |
| Jan. 31 | | 170.00 | | 6,183.15 | |
| Do | | 2,135.00 | | 8,318.15 | |
| Feb. 29 | | 30.00 | | 8,348.15 | |
| Do | | 2,000.00 | | 10,348.15 | |
| Do | | 30.87 | | 10,379.02 | |
| Mar. 31 | | 170.94 | | 10,549.96 | |
| Do | | 850.00 | | 11,399.96 | |
| Apr. 30 | | 144.50 | | 11,544.46 | |
| Do | | 2,183.43 | | 13,727.89 | |
| May 31 | | 168.96 | | 13,896.85 | |
| Do | | 196.75 | | 14,093.60 | |
| June 30 | | 146.98 | | 14,240.58 | |
| Do | | 2,403.75 | | 16,644.33 | |
| Do | | 343.33 | | 16,987.66 | |
| Do | | | 395.30 | 16,592.36 | |
| Do | | | 15,000.00 | 1,592.36 | |
| Do | | 144.00 | | 1,736.36 | |
| Do | | | 450.00 | 1,286.36 | |
| Do | | | 1,286.36 | 0 | |

In their joint Federal income tax returns filed for the calendar year 1959 petitioners each reported only the $10,500 as salary from the corporation, formally declared by the board of directors on July 15, 1959. On such returns they each also reported one-half of the net taxable income of the corporation for the short period ended June 30, 1959, in the amounts of approximately $15,000 each. Neither petitioner reported any amount as salary from the corporation for the last 6 months of 1959. In their joint Federal income tax returns filed for the calendar year 1960, petitioners each reported $15,000 salary from the corporation and applicable to the last 6 months of 1959 and the first 6 months of 1960, and each petitioner also reported his pro rata share of the net taxable income of the corporation for its fiscal year

ended June 30, 1960. Such net taxable income amounted to approximately $75,000. Petitioners have thereafter consistently continued this same method of reporting their incomes from the corporation.

OPINION

Respondents' entire argument in this case is that the petitioners each constructively received as salary, during the last 6 months of 1959, half of the $15,000 salary for the corporation's fiscal year ended June 30, 1960, even though it was not fixed by corporate resolution or shown on the corporation's books until February 16, 1960.

Respondent relies heavily on section 451(a) of the Internal Revenue Code and the following portions of section 1.451–1(a) and 2(a), Income Tax Regs.:

SEC. 451. GENERAL RULE FOR TAXABLE YEAR OF INCLUSION.

(a) GENERAL RULE.—The amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under the method of accounting used in computing taxable income, such amount is to be properly accounted for as of a different period.

SEC. 1.451–1 General rule for taxable year of inclusion.

(a) *General rule.* Gains, profits and income are to be included in gross income for the taxable year in which they are actually or constructively received by the taxpayer unless includible for a different year in accordance with the taxpayer's method of accounting. * * * Under the cash receipts and disbursements method of accounting, such an amount is includible in gross income when actually or constructively received. * * *

SEC. 1.451–2 Constructive receipt of income.

(a) *General rule.* Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account or set apart for him so that he may draw upon it at any time. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. Thus, if a corporation credits its employees with bonus stock, but the stock is not available to such employees until some future date, the mere crediting on the books of the corporation does not constitute receipt. * * *

The difficulty with respondent's approach is that the quoted sections of the Code and regulations start with the assumption that the amounts in dispute are in fact "gross income," "taxable income," "gains," "profits," or, in the context of this case, salary. To so hold, under the facts of this case, would be to allow the Commissioner to go farther than in any yet adjudicated case, toward substituting his wishes for regularly taken corporate action. In this aspect this case resembles *A. S. Eldridge*, 30 B.T.A. 1322, affd. 79 F. 2d 629 (C.A. 9), where we said (p. 1325):

The respondent's argument against recognizing the transaction as a bona fide sale is based on Eldridge's ownership of stock in the transferee corporation.

Because of this stock ownership, it is argued, Eldridge had no one to deal with but himself.

It has been emphasized of late by the highest authority we have that the general rule, and the rule for tax purposes, is that corporations and their stockholders are to be treated as separate entities. *Burnet* v. *Clark*, 287 U.S. 410: "A Corporation and its stockholders are generally to be treated as separate entities. Only under exceptional circumstances * * * can the difference be disregarded." *Dalton* v. *Bowers*, 287 U.S. 404: "Certainly, under the general rule for tax purposes a corporation is an entity distinct from its stockholders, and the circumstances here are not so unusual as to create an exception." *Burnet* v. *Commonwealth Improvement Co.*, 287 U.S. 415: "Counsel for respondent concede that ordinarily a corporation and its stockholders are separate entities, whether the shares are divided among many or are owned by one." *Klein* v. *Board of Supervisors* (a state tax case), 282 U.S. 19: "But it leads nowhere to call a corporation a fiction. If it is a fiction it is a fiction created by law with intent that it should be acted on as if true. The corporation is a person and its ownership is a nonconductor that makes it impossible to attribute an interest in its property to its members." See also *Edward Securities Corp.*, 30 B.T.A. 918; *Jones* v. *Helvering*, 71 Fed. (2d) 214. * * *

What is in dispute in this case is the time when (calendar year 1959 or 1960) petitioners must include corporate salary in their returns. The size of and petitioners' entitlement to the salary are not questioned by respondent and indeed could have no effect on the revenues save for what *de minimis*, pro rata effect they might have for the last 14 days of the year in issue, and after petitioner Hughes had transferred 240 of his 900 shares of stock in the corporation to his three children.

Petitioners argue that to "shift" taxable salary from 1960 back to 1959 would result in double taxation as to the part so shifted since they as individuals must also report and pay tax on this "tax-option" corporation's net earnings. But petitioners have misconceived the effect. Such a shifting would result in acceleration of taxability only, not double taxation, for the corporation's credits for salaries paid would also have been advanced 6 months and at the final termination of the employer-employee relationship between the corporation and these petitioners they would no longer be faced with a possible long tax period of more than 12 months' duration.

As noted above, the Commissioner's theory and argument in this case is constructive receipt. The determination of this question must be resolved largely on the facts in any given case; consequently it is helpful at this point to examine and compare the facts [2] of those cases in this field which are most comparable to the instant case.

In *Eckhard* v. *Commissioner*, 182 F. 2d 547 (C.A. 10), affirming 12 T.C. 384 on this point, the taxpayer argued that he had constructively received salary from his controlled corporation in earlier years. The court said (p. 551):

---

[2] The facts are in the portions quoted from the adjudicated cases, where possible.

But mere authorization of the amount of salary or compensation to be drawn by an officer of the corporation does not constitute payment or constructive receipt, even though the officer may, at all times, have the power to effect the payment of such salary or compensation in virtue of his control of the corporation. Hyland v. Commissioner, 2 Cir., 175 F. 2d 422.

Here, the taxpayer was on a cash basis and he never reported any of the sum in question for the years in which he earned it. Nor do the books of the corporation show a credit to the taxpayer or that any sums were set apart for salary or compensation to the taxpayer. Indeed, the record shows that the earnings were left in the corporation as "working capital" and were used by it for that purpose. * * *

*Hyland* v. *Commissioner*, 175 F. 2d 422 (C.A. 2), affirming a Memorandum Opinion of this Court, concerned taxpayer's contention that salary paid to him in 1943 for services rendered to a corporation in 1942 should be taxed to him in the earlier year under the doctrine of constructive receipt. In holding such doctrine inapplicable the court said (p. 424) :

No doubt it is true that the taxpayer by reason of his very large stock ownership, could have effectively directed the various agents having charge of the corporation's bookkeeping and financial affairs to take action to make available to him the necessary cash and to draw a check in his favor for the amount claimed by him for 1942 services. But he did not do so; indeed, there is no evidence that he even knew of the directors' resolution authorizing his compensation before he received it. *The argument that the rule of constructive receipt becomes applicable with the mere possession of such power, without any indication of an intent to exercise it, proves too much.* It would mean that in every close corporation the corporate earnings are immediately constructively received by the controlling stockholder provided their withdrawal would not make the corporation insolvent. But the law ordinarily treats a corporation and its controlling stockholder as separate juristic persons, and they are separately taxable. * * * [Emphasis added.]

In *C. E. Gullett*, 31 B.T.A. 1067, the Commissioner determined that taxpayers had constructively received salaries from their controlled corporation, such salaries having been set up on the corporation's books and claimed as a deduction. Thus there was definite corporate action taken with regard to the salaries, yet we denied the relief sought by the Commissioner since there had been contradictory action taken by the corporation's board (limiting the salaries to a lesser amount than that set up on the books) and the corporation's financial condition was such that the full salaries could not have been paid without embarrassment. The case is not too close on its facts, but it is included here because it is unique in denying constructive receipt in a situation where some definitive corporate action has been taken, and because of its statement of applicable principles (p. 1069) :

the principles to be applied in deciding the case at bar upon its own facts have been established. *It is clear that the doctrine of constructive receipt is to be sparingly used;* that amounts due from a corporation but unpaid, are not to be included in the income of an individual reporting his income on a cash receipts

basis unless it appears that the money was available to him, that the corporation was able and ready to pay him, that his right to receive was not restricted, and that his failure to receive resulted from exercise of his own choice. * * *

Here, petitioners' right to receive their salaries in full was restricted by action of the directors of the company. They could be paid only $6,000 each until that restriction was removed when "the company's finances are in better shape." True enough, as respondent points out, these petitioners were in control of the company, both as stockholders and directors and, had they so desired, could have voted the removal of the restriction and authorized full payment of the salaries. But that they did not do. The facts are that the restriction stood, and that petitioners each received only $6,000 during the year. [Emphasis added.]

Respondent relies on *Reub Isaacs & Co., Inc.*, 1 B.T.A. 45, but in that case corporate action regarding extra compensation to corporate officers had been taken before the close of the year but the bookkeeper, through inadvertence, failed to record it on the corporation's books until after the close of the year. In the instant case there was no corporate action of any kind until February 1960.

Other cases cited by respondent are similarly distinguishable. In *John A. Brander*, 3 B.T.A. 231; *Chester M. Curry*, 3 B.T.A. 237; *George S. Groves*, 38 B.T.A. 727; *James J. Cooney*, 18 T.C. 883; *Hurtz v. United States*, 162 Ct. Cl. 855; *John I. Chipley*, 25 B.T.A. 1103; *Burns v. Commissioner*, 31 F. 2d 399; and *Ross v. Commissioner*, 169 F. 2d 483, there had been definitive corporate action with respect to the salary or compensation in dispute, either in the form of a resolution, or an entry on the corporate books, or both such actions, and the beneficiary of such action simply failed to draw all or some part of the funds so made available.

*Acer Realty Co.*, 45 B.T.A. 333, affd. 132 F. 2d 512 (C.A. 8), is also distinguishable. In that case petitioner had acquired a contractual right, on the happening of a condition, to offset $8,700 rental income against a larger debt owed by petitioner to its tenant. Petitioner failed to make the offset on its books. The secretary-treasurer of petitioner stated at the trial: "I claim we could offset it, but we don't have to." Under these circumstances it was properly held that "Negligent or willful delay in making a proper book entry cannot be used to defeat the taxing power." We perceive no parallel between such facts and those of the instant case for it is common knowledge that small, closely held corporations often wait till the end, or near the end, of their fiscal year before setting executive salaries and bonuses for it is then that their operating results are known or can be judged, and the remuneration of executives made realistic. Such was the tenor of the corporation's resolutions setting petitioners' salaries at $400 per month "with the understanding * * * [for additional compensation] * * * at the end of the year if the company earns a satisfactory profit."

It is settled law that the doctrine of constructive receipt is to be applied sparingly. *William A. Hines*, 38 B.T.A. 1061; *John A. Brander, supra; C. E. Gullett, supra; Julian Robertson*, 6 T.C. 1060; *Robert J. Dial*, 24 T.C. 117; *George W. Johnson*, 25 T.C. 499. Many cases recognize that closely held corporations often act with a minimum of formality, and "much like partnerships," *Reub Isaacs & Co., Inc., supra*, but we consider that the facts of the instant case afford no basis for ignoring the actions taken by this corporation and constructively substituting actions to make petitioners' salaries available to them, as such, in an earlier year. In the adjudicated constructive receipt cases the courts have searched to find the acts of closely held corporations. They have not ignored such acts, or substituted others therefor, except on facts much stronger than those here present. It is clear that the resolutions of December 31, 1958, fixing the compensation of each petitioner at $400 per month remained effective during the year in issue; consequently an additional $2,400 salary was available to each petitioner in 1959 and respondent's determinations are approved to that extent. *James J. Cooney, supra.*

Respondent has observed on brief that a situation, analogous to the one here, existed with respect to partnerships prior to the enactment of section 706(b)[3] as a part of the Internal Revenue Code of 1954. Respondent is correct insofar as distributive net earnings of partnerships are analogous to corporate salaries (and in this case we believe they are) for it was then the law that partnership returns could be made on a different basis than those of its members even though the partners were required to include their distributive shares in their individual returns only for the taxable year within which or with which the taxable year of the partnership ended. *Helvering* v. *Enright*, 312 U.S. 636; *Beulah H. Nichols*, 32 T.C. 1322; *Rose Mary Hash*, 4 T.C. 878. We observe simply that this "analogous situation" was changed by statute, not by a further stretching of the doctrine of constructive receipt.

<div align="right">

*Decision will be entered under Rule 50.*

---

[3] SEC. 706. TAXABLE YEARS OF PARTNER AND PARTNERSHIP.

   (b) ADOPTION OF TAXABLE YEAR.—

   (1) PARTNERSHIP'S TAXABLE YEAR.—The taxable year of a partnership shall be determined as though the partnership were a taxpayer. A partnership may not change to, or adopt, a taxable year other than that of all its principal partners unless it establishes, to the satisfaction of the Secretary or his delegate, a business purpose therefor.