LAWRENCE B. WOODMAN and GLORIA M. WOODMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Woodman v. Commissioner
Docket No. 8400-74.
United States Tax Court
T.C. Memo 1977-25; 1977 Tax Ct. Memo LEXIS 413; 36 T.C.M. (CCH) 121; T.C.M. (RIA) 770025; February 1, 1977, Filed *413 In 1971, P received $10,560 in payment of a $12,000 note which had been issued to him as compensation in 1962. P did not report receipt of such amount on his 1971 return. Held, P failed to prove that any amount was included or includable in his gross income in 1962 by reason of the receipt of the note in that year; therefore, the $10,560 payment received in 1971 was properly includable in gross income for such year. Lawrence *414 B. Woodman, pro se. James F. Kidd, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined a deficiency of $2,069.75 in the petitioners' Federal income taxes for 1971. The sole issue for decision is whether $10,560.00, received by Lawrence B. Woodman in 1971, in payment of a promissory note issued to him as compensation in 1962, should have been included in gross income for 1971. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, Lawrence B. Woodman and Gloria M. Woodman, husband and wife, had their legal residence in Janesville, Wis., at the time of filing the petition in this case. They filed a joint Federal income tax return, using the cash receipts and disbursements method of accounting, for the taxable year 1971 with the Internal Revenue Service Center, Kansas City, Mo. Mr. Woodman will sometimes be referred to as the petitioner. In 1971, the petitioner received $10,560 from Kewood Corporation (the corporation) in payment and discharge of a note in the face amount of $12,000 issued to him in 1962 by the corporation. The corporation *415 was a small, closely held family corporation. As of December 1962, Mr. and Mrs. Woodman owned 750 shares of stock in the corporation, and 750 shares were owned by Mr. Woodman's sister. In January of 1963, additional stock was issued to the corporation's lawyers in payment of legal fees, resulting in ownership as of January 1963 as follows: Mr. and Mrs. Woodman
37-1/2 percent
Mr. Woodman's sister
37-1/2 percent
Attorneys
25 percent
The petitioner was also the corporation's president and one of its directors. The corporation was in a precarious financial situation in 1962, and its prospects were uncertain. It was heavily in debt, and its properties were subject to outstanding security interests. According to the minutes of a special meeting of stockholders held on December 4, 1962, the petitioner reported to the other stockholders that the corporation had aggregate liabilities of $177,337, including approximately $11,000 owed to Florence M. Woodman Lueck, the petitioner's mother. According to such minutes: He further stated that said expenses will be incurred yearly; and there is insufficient income and insurance, leaving a monthly deficit of approximately *416 $672.16. There will be assessments for street improvements on Mayfair Drive of $838.88 for sewer and $701.59 for water. There are insufficient funds in the treasury to pay these assessments, and the real estate taxes and insurance for the current year. In view of such description of the corporation's financial situation, the board of directors was authorized to investigate a possible sale or lease of corporate property, and also was authorized to levy any necessary assessments upon the stockholders. On December 23, 1961, Mrs. Lueck created an irrevocable trust with respect to certain assets and securities, retaining a life interest in the income therefrom, with the corpus to be distributed upon her death to her executor. The petitioner was one of three trustees named in the trust agreement. The agreement also specifically authorized the trustees to make loans, secured or unsecured, to the corporation upon such terms and conditions as they alone determined. Among the assets listed in a schedule attached to the trust agreement were two promissory notes of the corporation, both dated December 23, 1961, bearing interest at a rate of 2 percent, and payable upon demand. One note *417 was in the amount of $8,000.00; the other was for $3,813.40. The trustees' report for the period from December 23, 1961, through December 31, 1962, states that as of January 1, 1963, the trust had assets of $27,076.40. In such report, the corporation's notes were included at face value as assets of the trust. In December of 1962, the board of directors of the corporation voted to pay the petitioner $12,000 to compensate him for services performed by him for the corporation during such year. However, the corporation did not have sufficient cash to make such payment. Accordingly, on December 4, 1962, it issued to him its promissory note, in the face amount of $12,000, payable 10 years from date; the note bore no interest and was unsecured. Concomitantly, the board of directors voted to restrict the payment of dividends until the note to the petitioner had been paid. In January of 1963, the corporation issued stock in payment of attorneys' fees. Payment was made in such manner because the corporation was unable to make the payment in cash. On his Federal income tax return for 1962, the petitioner did not report any amount by reason of the receipt of the note in such year, *418 and the corporation claimed no deduction in 1962 with respect to its issuance of the note. The petitioner did not include the $10,560 on his Federal income tax return for 1971. In his notice of deficiency, the Commissioner asserted that such payment should have been included in gross income for 1971.
OPINION The petitioner maintains that the note "should have been * * * and probably was" reported as income on his 1962 return. The Commissioner, on the other hand, asserts that the petitioner did not report any amount as income with respect to his receipt of the note in 1962. In adidtion, he contends that: (1) The note was not properly includable in the petitioner's income for the year in which it was received because it had no fair market value at such time; (2) the note was not properly includable in income for the year in which received because it was not intended as payment, but merely as evidence of an indebtedness; (3) the petitioner is estopped from arguing that the note had any fair market value in 1962 because of his failure to report on his 1962 return any amount as income as a result of receipt of the note; and (4) the petitioner's failure to report the proceeds of the *419 note as income in 1971 represents an impermissible change of accounting method. Insofar as the petitioner relies upon the argument that the note was included in his return for 1962, he has the burden of proving such fact. Rule 142, Tax Court Rules of Practice and Procedure; cf. Welch v. Helvering,290 U.S. 111 (1933). Unfortunately, neither party could produce a copy of the petitioner's 1962 return. The petitioner has not taken the position that he did in fact report any amount with respect to the note in 1962; he testified that he could not remember whether the note was reported on his 1962 return. Although there is no evidence of record indicating that the petitioner did report the note as income in 1962, there is considerable evidence to establish that he did not. The Commissioner produced at trial a certificate of assessments and payments for the petitioner for 1962. Such certificate reflects that the petitioner's 1962 return indicated that he was due a refund of $1.21, and that such amount subsequently was refunded to him. The petitioner testified that he sustained no significant losses during 1962, which might have served to offset the effect on *420 taxable income of the inclusion of the $12,000 note. It is reasonable to assume that inclusion of the $12,000 note, with respect to which no taxes had been withheld, would result in tax liability in excess of amounts previously withheld, rather than result in a refund. Furthermore, the petitioner's income was not so high in 1962 that inclusion of a $12,000 noncash item of income would be forgotten. Although he testified that he could not remember his income for 1962, he did testify that from 1965 through the next several years, his income varied from approximately $5,000 to $9,000 yearly. There is no reason to believe that his income for 1962 was substantially higher, particularly in light of his testimony that he experienced financial difficulties during such year. The petitioner also testified that if he had been required to pay taxes in addition to amounts previously withheld, it would have been necessary for him to borrow money to do so; yet, he did not remember having to borrow money to pay taxes for 1962. In addition, the attorney who prepared the petitioner's 1962 tax return testified that the note was not included therein. The same attorney prepared the return of *421 the corporation, which did not deduct on its 1962 return the amount of the note as a payment of compensation. It is likely that the return preparer treated the item consistently in the returns of the corporation and the petitioner. Accordingly, to the extent that the petitioner relies upon his inclusion of the note as income in his 1962 return, we find that he has failed to sustain his burden of proof. Rule 142, Tax Court Rules of Practice and Procedure; cf. Welch v. Helvering,supra.
The petitioner further contends that regardless of his actual treatment of the note, it was properly includable in income for 1962, and that any adjustment for such year is now barred by the statute of limitations. Sec. 6501, Internal Revenue Code of 1954. As a general rule, a promissory note received as payment for services by a cash basis taxpayer constitutes income in the year of receipt to the extent of the fair market value of the note. Sec. 1.61-2(d)(4), Income Tax Regs.; Jay A. Williams,28 T.C. 1000, 1001 (1957); *422 Robert J. Dial,24 T.C. 117, 122 (1955); R. V. Board,18 B.T.A. 650, 654 (1930); see Scharf's Estate v. Commissioner,316 F. 2d 625, 630 (7th Cir. 1963), affg. 38 T.C. 15 (1962); Howard G. Kingsbury,65 T.C. 1068, 1091 (1976). However, the Commissioner maintains that the note had no fair market value at the time of its receipt, and that therefore no amount was properly includable with respect to it in 1962; he contends that it was reportable as income only when and to the extent paid. The taxpayer has the burden of proving that the Commissionr 's determination of fair market value is erroneous. See Lenamon v. Commissioner,296 F. 2d 844, 846-847 (5th Cir. 1961), affg. a Memorandum Opinion of this Court; Howard G. Kingsbury,supra.
The note that the petitioner received bore no interest, was not secured, and was not payable until 10 years from the date of its issuance. The fact that there was no collateral to secure the performance of the note and that it was not payable for a *423 period of 10 years cast doubt on the collectibility of the note. Max Kronenberg,64 T.C. 428, 437 (1975); Jay A. Williams,supra at 1002; K. E. Merren,18 B.T.A. 156, 157 (1929), affd. 51 F. 2d 44 (5th Cir. 1931). Moreover, the maker of the note was experiencing financial difficulties; the note was written because the corporation was not in a position to pay cash. Jay A. Williams,supra.Unfortunately, a balance sheet for 1962 was not introduced into evidence, and the nature and extent of the corporation's assets are not clear from the record. However, testimony in the record and the minutes of the December 4, 1962, meeting of shareholders reveal that the corporation's assets were encumbered by security interests, and that it was unable to meet its current obligations as they matured. Frank B. Essex,21 B.T.A. 270, 273 (1930); R. V. Board,18 B.T.A. at 654; R. M. Rogers et al.,7 B.T.A. 711, 713 (1927). The precarious financial situation of the corporation raised additional grave doubts over what amount, if any, would ultimately be paid on the note. Compare *424 Joseph Marcello, Jr.,43 T.C. 168, 180-181 (1964), affd. in part and remd. in part on another issue 380 F. 2d 499 (5th Cir. 1967), cert. denied 389 U.S. 1044 (1968); Max Kronenberg,supra at 437; and K. E. Merren,supra; with Robert W. Adams,58 T.C. 41, 55 (1972). Although the petitioner has the burden of proof, he offered no evidence, other than his own testimony, to establish the fair market value of the note at the time of its issuance; nor did he offer any evidence as to any particular amount he would have the Court find as the fair market value of the note. On brief, he asserted that at the time of its issuance, the note had a fair market value equal to its face value. This assertion is patently incorrect; even if the note had been a secured instrument, issued by a solvent and responsible maker, it would have been subject to a substantial discount to provide an interest factor over 10 years. The Commissioner, on the other hand, offered the expert testimony of a bank loan officer with 46 years of experience that his bank would not have paid any amount to purchase the note in 1962. *425 The fact that a bank or other financial institution would have considered the note of no present value is a relevant factor in ascertaining fair market value. Jay A. Williams,28 T.C. at 1002; Ed Foster,19 B.T.A. 958, 961 (1930); Miami Beach Improvement Co.,14 B.T.A. 10, 12 (1928). Under the circumstances, we find that the petitioner has failed to sustain his burden of proving that the note had value in 1962, and we hold that the amounts received by the petitioner in payment of the note were includable in his gross income in 1971. The petitioner argues that the corporation could have borrowed money from the trust established by his mother and thereby paid his salary. Although perhaps the corporation could have borrowed money, it did not; instead, it issued a note, and the question we must determine is the fair market value of such note. The potential availability of funds from the trust in 1962 does not have a significant effect upon the fair market value of the note. It was not payable until 10 years from the date of its issuance, and there was no guarantee that either the *426 trust or the corporation would still be in existence at such time. Finally, we must consider the petitioner's argument that funds were constructively received by him in 1962. The doctrine of constructive receipt requires that monies credited to the account of, or set aside for, the taxpayer, subject to his unfettered withdrawal at any time, be included in gross income in the year when so credited or set apart, although not in fact reduced to possession. Sec. 1.451-2(a), Income Tax Regs.; Robert J. Dial,24 T.C. at 123; James J. Cooney,18 T.C. 883, 885-886 (1952); William A. Hines,38 B.T.A. 1061, 1067 (1938). However, the corporation never took any action to make the funds available to the petitioner. Jerome Castree Interiors, Inc.,64 T.C. 564 (1975), affd. without published opinion 539 F. 2d 714 (7th Cir. 1976). Moreover, he was not in a position to withdraw funds at his discretion, as no funds were available for withdrawal. Accordingly, the doctrine of constructive receipt *427 is inapplicable. Robert J. Dial,supra at 124; William A. Hines,supra at 1068. As we have upheld the Commissioner's determination that the note had no fair market value at the time it was issued, and that therefore the amount ultimately paid on the note in 1971 is includable in gross income for such year, it is unnecessary to consider the alternative arguments presented by the Commissioner. Decision will be entered for the respondent.